IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**DANICA LOVE BROWN**,
individually and on behalf of all others
similarly situated,

        Plaintiff(s),

v.

**STORED VALUE CARDS, INC.**
(d/b/a **NUMI FINANCIAL**); and
**CENTRAL NATIONAL BANK AND
TRUST COMPANY, ENID, OKLAHOMA**,

        Defendants.

Case No. 3:15-cv-01370-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Defendants move to dismiss Plaintiff's complaint [74]. On August 11, 2016, I held oral argument on the motion. For the reasons set forth below, I GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss [74]. The motion is GRANTED with respect to Plaintiff's Electronic Funds Transfer Act claim and Plaintiff's §1983 claim. It is DENIED with respect to Plaintiff's state law claims.

## BACKGROUND

    Plaintiff Danica Love Brown was arrested, held at the Multnomah County jail, and released the next day. At the time of her arrest, Ms. Brown had $30.97 in cash on her, all of which was confiscated at booking. When she was released, Ms. Brown received a preloaded

1 – OPINION AND ORDER

NUMI card with a balance of $30.97. The NUMI card acts as a preloaded debit card. Holders of the card can use it as a debit card to make routine purchases and can receive cash back from those purchases. Holders can receive their money through an in-person bank teller withdrawal or an online card-to-bank-account transfer. After receiving her card, Ms. Brown used it in various ways which incurred fees. She now brings a class action suit against Defendants, who administer the debit card system, opposing the imposition of disproportionally high fees on her and other similarly situated plaintiffs.

## LEGAL STANDARD

In evaluating a motion to dismiss, the court is to "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the nonmoving party." *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1196 (9th Cir. 1998) (quoting *Warshaw v. Xoma Corp.,* 74 F.3d 955, 957 (9th Cir. 1996)). As the Supreme Court has stated, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Rather, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## DISCUSSION

Ms. Brown brings four claims: 1) violation of the Electronic Fund Transfer Act ("EFTA"); 2) a § 1983 Takings Claim; 3) conversion; and 4) unjust enrichment. Defendants move to dismiss all claims, and I address each in turn.

1. EFTA Claim – Cards are Exempt from Regulation under EFTA

The parties agree the EFTA claim fails if the card was not "marketed to the general public." In her complaint, Ms. Brown alleges Defendants market and distribute the card to government agencies "for dissemination to the general public." (Pl. Am. Compl. at 18.) Ms. Brown argues that because Defendants' market to government agencies and the agencies then distribute the cards to jurors and individuals on work release, Defendants indirectly market their cards to the general public and intend for the cards to end up in possession of the general public.

The relevant EFTA regulation states a card is "marketed to the general public . . . if the potential use of the card . . . is directly or indirectly offered, advertised, or otherwise promoted to the general public." 12 C.F.R. § 1005.2, Supp. I. The implementing regulation offers an instructive example. Where a tax preparer company issues a tax refund to its clients via a prepaid card, but does not advertise the card, because the prepaid card is "simply the mechanism for providing" the money to the consumer the card would not be subject to the relevant EFTA regulation. *Id.* The tax refund card is a compelling analogy for our case. Here, the card from the prison was "simply the mechanism for providing" the money to Ms. Brown and there is no allegation that either the jail or Multnomah County advertised the ability to obtain the money by a prepaid card. As such, I find the card was not "marketed" to the general public, and thus the card does not fall under the EFTA. I GRANT Defendants' Motion to Dismiss this claim.

2. § 1983 Takings Claim

Ms. Brown's second claim is a § 1983 action alleging the card's improperly high fees were a regulatory taking in violation of the Fifth Amendment as incorporated by the Fourteenth Amendment. Defendants contend they cannot be sued for a regulatory taking or under § 1983 because they are private, not state, actors. "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth

3 – OPINION AND ORDER

Amendment: is the alleged infringement of federal rights fairly attributable to the [government]?" *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir. 1999) (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982) (citation and internal quotation marks omitted)); *see also Kitchens v. Bowen*, 825 F.2d 1337, 1340 (9th Cir. 1987).

"To determine whether actions that allegedly caused the deprivation of a right are fairly attributable to the state even though they were committed by private actors, [I] follow a two-part approach: 'First, the **deprivation** must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. Second, the party charged with the deprivation must be a person who may fairly be said to be a **state actor.**'" *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011) (emphasis added) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). I address the "state actor" prong first and then proceed to the "deprivation" prong.

i. State Actor

"What is fairly attributable [as state action] is a matter of normative judgment, and the criteria lack rigid simplicity. . . . [N]o one fact can function as a necessary condition across the board . . . nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295-96 (2001)). There are a number of test used to identify state action. *Id.* For the purposes of our case, I focus on two: the public function test and the joint action test.

a) Public Function

Ms. Brown argues Defendants acted under color of state law under the "public function" test. "Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or

4 – OPINION AND ORDER

instrumentalities of the State and subject to its constitutional limitations." *Florer*, 639 F.3d at 924 (9th Cir. 2011) (citations omitted) (internal quotation marks omitted). "The public function test is satisfied only on a showing that the function at issue is both traditionally and exclusively governmental." *Id.* (citations omitted) (internal quotation marks omitted).

The function of charging fees for debit cards is typically not seen as traditionally or exclusively governmental. However, charging fees for government service, or charging fees for an arrestee's time in jail (i.e. a "bail fee" or a "booking fee"), *is* a traditionally governmental function. Therefore, I must necessarily decide how to characterize the function at issue—either as a debit card service or as part of the supervising and returning of Plaintiff's property from her time in jail. I find the function Defendants performed was to return Ms. Brown's money from her time in jail, and I view that function as a traditionally governmental role. The relationship of Ms. Brown and the Defendants is one that could only come about through the exercise of the state's power. The state confiscated Ms. Brown's money and left her no choice on how to retrieve it. She has the Defendants' debit card because the state gave it to her upon her release from jail. As the card has no intrinsic value, she *must* use some portion of the Defendants' program to obtain the value of her money. The fees Defendants charged are a way, essentially, to ease the burden on the state of maintaining a program to return the money. Defendants serve the same role the government would in the final portion of returning Ms. Brown's money. As such, I find, at this stage of the litigation, Ms. Brown has satisfied the public function test.

b) Joint Action

In the alternative, Ms. Brown argues she has sufficiently shown Defendants' actions satisfy the "joint action" test. "Under the joint action test, 'courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional

5 – OPINION AND ORDER

rights.'" *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1453 (10th Cir. 1995). The test focuses on whether the state has "'so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity.'" *Gorenc v. Salt River Project Agric. Improvement & Power Dist.*, 869 F.2d 503, 507 (9th Cir. 1989) (quoting *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725 (1961)). A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was "a willful participant in joint activity with the State's agents." *Collins v. Womancare,* 878 F.2d 1145, 1154 (9th Cir. 1989) (quotations omitted). The Ninth Circuit requires a "substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights." *Franklin*, 312 F.3d at 445.

  Defendants argue Multnomah County was not involved in determining user fees and such allegations would be "implausible" because the fees are charged for usage of the card—something that occurs after arrestees have left state custody. Again, this argument depends on how one frames the question. If the fees are viewed as the necessary expense for running a program that keeps track of and returns prisoners' money then it is clear that Multnomah County would be involved. By contracting with Defendants, Multnomah County has put them in charge of at least part of the last leg of the monetary transition from the state to Ms. Brown. In addition, the contract allows the County to transfer the costs of storing, tracking, and returning an arrestees' money to the Defendants, who recoup those costs from the prisoners. Furthermore, the government was deeply intertwined in forcing Ms. Brown, and others like her, to use the cards. Ms. Brown's complaint supports this theory. In it, she alleges Defendants promised the government the cards would "allow facilities to go complete cashless" (Pl.'s Am. Compl. 5.)

Furthermore the arrangement gives to Defendants "the traditional government service of returning money" (*Id.*) at "*no cost*" to the County (Pl.'s Am. Compl. Ex. A. at 1.)  Indeed, there is *no way* the money gets returned to arrestees *except* through the Defendants' program.  Under Ms. Brown's theory of the case, with what she has alleged in her complaint, she has sufficiently alleged the state and the corporation are "joint participant[s] in the challenged activity."

ii. Deprivation

In addition to finding Defendants are state actors, I must determine whether the deprivation alleged was the "result [of] a governmental policy." *Sutton*, 192 F.3d at 835 (1999). That is, the deprivation was caused by 1) "the exercise of some right or privilege created by the State;" 2) "by a rule of conduct imposed by the state;" or 3) "by a person for whom the State is responsible." *Florer*, 639 F.3d at 922 (citation omitted) (internal quotation marks omitted). The first is not applicable to our case as I decline to view all contracts entered into by public entities as a "right or privilege" created by the state.  I address the second and third theories below.

a) Rule of Conduct Imposed by the State

While under the "state actor" prong I looked at the function the Defendants and the government performed, the "deprivation" prong requires I look more narrowly at what deprivation Ms. Brown alleges.  The function performed was taking and restoring Ms. Brown's money; the deprivation alleged is charging disproportionately high fees for that service.  Ms. Brown argues the government caused this deprivation when it negotiated and signed the contract with Defendants which outlined the fees.  The question then is whether the contract was a "rule of conduct imposed by the state." I find, for the purposes of our case as currently pleaded, it was not.

While the state may be able impose a rule of conduct through a contract, something more is required than what has been pleaded in this complaint.  Here, Ms. Brown alleges the County

7 – OPINION AND ORDER

negotiated the contract, asked for a fee to be imposed after five business days rather than five calendar days, and signed the contract which outlined the fees Defendants were to impose. Signing and negotiating a contract, without more, does not meet the standard of a state imposed rule of conduct. Rather, it is the normal give and take of a business exchange. If during the course of those negotiations the County had made it a condition of entering into the contract that Defendant charge specific fees for specific uses of the card, Plaintiff's argument that the state imposed a rule of conduct would be substantially stronger. The only allegation that comes close to this level is in footnote 3 of Plaintiff's Amended Complaint which states "the County asked Stored Value Cards to change its practice of charging the monthly service fee from 5 calendar days after receipt of the card to 5 business days." (Pl.'s Am. Compl. 10 at fn. 3.) However, this allegation fails for two reasons. First, Ms. Brown's theory is that the fees charged were unreasonably high, not that they were charged too early, making the temporal term of the contract irrelevant. Second, the footnote goes on to state "Stored Value Cards agreed, but never implemented that change," which, even taken in the light most favorable to the non-moving party, undermines the idea that the County imposed its will. Thus, I find while it may be possible for a contract to satisfy this standard, Ms. Brown's Complaint fails to allege sufficient facts to support such a theory. However, Plaintiff will be given leave to amend to add any further factual support she may have for this theory.

              b) By a Person for Whom the State is Responsible

The third theory states that if the deprivation was caused by a person for whom the state is responsible the second prong of the §1983 test would be satisfied. *Florer*, 639 F.3d at 922. This is not a theory that has been articulated in the Amended Complaint, but the Complaint does have some facts that might support such a theory. Therefore, I GRANT the Motion to Dismiss

the § 1983 claim, but grant Plaintiff leave to amend and address either the "rule of conduct" or "person for whom the state is responsible" tests.

3. State Law Claims

Ms. Brown's third claim for conversion and fourth claim for unjust enrichment are both premised on whether or not Defendants were acting lawfully in taking Ms. Brown's money. For example, with the conversion claim Defendants argue Ms. Brown cannot show they lacked legal right to exercise dominion or control over the property. There are two ways Defendants argue they were acting legally. First, Defendants would have acted legally in taking the fees if there was a valid contract between Ms. Brown and Defendants. Second, Defendants argue they were acting legally because they were authorized by Multnomah County to take fees. *See, e.g., Mickelson v. Cty. of Ramsey*, 2014 WL 4232284, at *15 (D. Minn. Aug. 26, 2014), *aff'd*, 2016 WL 2342925 (8th Cir. May 4, 2016) (holding no unjust enrichment because the county authorized debit fees). I address each argument in turn.

a. Existence of a contract

Defendants are analytically correct that if there were a valid contract between the parties, Ms. Brown would be hard pressed to maintain either a conversion claim or an unjust enrichment claim. However, this argument depends on the existence of a contract. The contract is neither alleged in nor attached to the complaint. The analysis Defendants ask that I undertake in determining a valid contract exists necessitates that I read whatever forms are relevant and know the facts about the potential contract formation. At this stage of the litigation, I can do neither. Any relevant forms were not attached to the complaint and cannot be properly considered at the motion to dismiss stage. Similarly, a motion to dismiss is not the appropriate stage of the case to

determine the facts surrounding the formation of a contract. As such, Defendants' argument that Ms. Brown's conversion and unjust enrichment claims must be rejected.

### b. Acting Legally

Defendants' argument they were acting legally is more narrowly tailored to Ms. Brown's unjust enrichment claim. The elements for unjust enrichment are (1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it. *Cron v. Zimmer*, 296 P.3d 567, 577 (2013) (citation omitted). Both parties agree Defendants received a benefit, but they disagree over whether it is "unjust" for Defendants to retain that benefit. "A plaintiff can show a recipient's actions are unjust by proving one of three things: (1) the plaintiff had a reasonable expectation of payment; (2) the defendant should reasonably have expected to pay; or (3) society's reasonable expectations of security of person and property would be defeated by non-payment." *Id.* at 577-79.

Ms. Brown argues she meets the third option that "society's reasonable expectations . . . would be defeated by non-payment." *Id.* Defendants argue it would not defeat society's expectations because they are legally authorized to collect the fees. Defendants point to a Minnesota case, which addresses a similar debit card situation, where the court reasoned because the contracts with *the County* were lawfully authorized the enrichment was just. *Mickelson*, 2014 WL 4232284, at *15 (noting "pursuant to [Defendants'] agreement with [the] County, the assessment of debit card fees . . . was legally authorized [and]. . . . Defendants were not 'unjustly enriched'"). While this case is factually directly on point, it is unpersuasive. The Minnesota court reasoned the charging of fees was "lawfully authorized" and therefore there could be no unjust enrichment claim. However, the real question before me is not whether the fees were

"lawfully authorized" but what society's reasonable expectations in this situation are. Certainly, that the government authorized Defendants to act is at least *some* evidence that *some* people in society would find Defendants' retention of fees acceptable, but it hardly seems to be the *per se* ban on an unjust enrichment claim that Defendants propose. Ending any possibility of unjust enrichment analysis because the Multnomah County Sherriff's office signed an agreement with Defendants invests entirely too much power in the Sheriff's office to dictate society's expectations. Aside from offering the Minnesota case, Defendants have done little to support the idea that lawful authorization negates unjust enrichment. I therefore DENY their Motion to Dismiss as to this theory.

## CONCLUSION

For the reasons stated above, I GRANT IN PART and DENY IN PART Defendants' Motion to Dismiss [74]. The motion is GRANTED with respect to Plaintiff's Electronic Funds Transfer Act claim and Plaintiff's §1983 claim. It is DENIED with respect to Plaintiff's state law claims.

DATED this 25th day of August, 2016.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United Stated District Judge

11 – OPINION AND ORDER