Daniel P. Mensher, OSB #074636
Mark A. Griffin (*Pro Hac Vice*)
Laura R. Gerber (*Pro Hac Vice*)
dmensher@kellerrohrback.com
mgriffin@kellerrohrback.com
lgerber@kellerrohrback.com
Keller Rohrback L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA  98101
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
(Additional Counsel on Signature Page)
*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DANICA LOVE BROWN, individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>   v.<br><br>STORED VALUE CARDS, INC. (d/b/a NUMI FINANCIAL); and CENTRAL NATIONAL BANK AND TRUST COMPANY, ENID, OKLAHOMA,<br><br>                  Defendant. | No. 3:15-cv-1370-MO<br><br>**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY**<br><br>**EXPEDITED HEARING REQUESTED** |

TABLE OF CONTENTS

I.      LOCAL RULE 7-1 CERTIFICATION ........................................................... 1

II.     MOTION ..................................................................................................... 1

III.    PROCEDURAL BACKGROUND ............................................................... 2

IV.     RELEVANT BACKGROUND ..................................................................... 7

        A.      Defendants' Debit Card Program Includes Hundreds of Facilities
                in Many States ................................................................................. 7

        B.      Transaction and Fee Data ................................................................. 9

        C.      Testimony Concerning Settlement Agreements with Cardholders Is
                Relevant. ......................................................................................... 10

V.      ARGUMENT ............................................................................................. 12

        A.      Legal Standard ............................................................................... 12

        B.      Defendants' Objections Are Without Merit .................................... 13

                1.      Numi's Privacy Concerns Can Be Remedied with the
                        Stipulated Protective Order. ................................................. 13

                2.      Defendants' Objection to Nationwide Discovery is
                        Improper and Has Been Waived. .......................................... 15

                3.      Production of the Data is Appropriate Because Discovery
                        Has Not Been Bifurcated, and the Court Has Ordered the
                        Parties to Complete Class and Merits Discovery. ................. 16

                4.      Numi Fails to Substantiate Any Burden of Production. ........ 18

VI.     CONCLUSION .......................................................................................... 19

APPENDIX A ...................................................................................................... 21

        Plaintiff's Second Request for Production of Documents to Defendant
        Stored Value Cards, Inc., (d/b/a Numi Financial) ............................... 21

## I.    LOCAL RULE 7-1 CERTIFICATION

Pursuant to LR 7-1(a)(1)(A), counsel for Plaintiff Danica Brown conferred with counsel for Defendant Stored Value Cards, Inc. ("Numi Financial" or "Numi"), by telephone on March 1, 2018, and March 15, 2018, and also by letter regarding the subjects of this motion. Numi has stated that it will oppose Plaintiff's motion, and also her request for an expedited hearing.

## II.    MOTION

Plaintiff Brown respectfully moves this Court pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(iv) to compel Defendant Numi[1] to produce documents as requested in Plaintiff's Second Request for Production of Documents ("Plaintiff's Second RFPs"), served on January 9, 2018, concerning cardholder information, and debit release card fees and transactions, on or before April 9, 2018. Plaintiff also moves pursuant to Federal Rule of Civil Procedure 37(a)(3)(B)(i) to compel Numi to testify concerning the terms of a settlement with a putative class member concerning fees.

Plaintiff requests three categories of documents from Numi as propounded in Plaintiff's Second RFPs: (a) information to identify cardholders; (b) information to determine the type, quantity, and nature of transactions processed on Numi's debit release cards for cardholders; and (c) information to determine the type, quantity, and nature of fees charged to cardholders. These are documents that Numi's counsel has in its possession, and it is information similar to that

---

[1] Plaintiff served the very same document requests on Defendant Central National Bank and Trust Company, Enid, Oklahoma ("CNB") on January 9, 2018. Defendant CNB responded on February 8, 2018, and in its response stated, "CNB states that following the termination of Prepaid Card Issuance Agreement between CNB and [Numi], CNB no longer has possession, custody, or control over the information sought, and accordingly, it is not reasonably available to CNB, but can be obtained from [Numi], the entity having possession, custody or control of the requested information." *See* Decl. of Laura R. Gerber in Supp. of Pl.'s Mot. to Compel ("Gerber Decl.") Ex. 1 at 3, 4, and 5 (Def. CNB Resp. to Pl.'s Second Req. for Prod., Feb. 8, 2018). Plaintiff is therefore only pursuing the information from Numi Financial at this time.

already produced by Defendants Numi and CNB in discovery for Plaintiff Brown. Numi lodges a number of objections, which all redound to one theme: Plaintiff is not entitled to this discovery prior to class certification. But discovery in this case has not been bifurcated, and Plaintiff seeks the information as part of fact discovery into the merits of the case, and also for her class certification motion. Numi's objections are neither reasonable nor proper.

Plaintiff also moves to compel Numi to testify concerning the terms of a settlement with a putative class member concerning fees.

Plaintiff requests hearing of this Motion on an expedited basis so that her expert may process and analyze the data in sufficient time to prepare her expert report by the Court's May 11, 2018 deadline. Plaintiff respectfully submits this memorandum of law, together with the Declaration of Laura R. Gerber in Support of Plaintiff's Motion to Compel ("Gerber Decl.") and its appended exhibits ("Ex. __"), in support of her Motion to Compel.

### III.    PROCEDURAL BACKGROUND

This case concerns Defendants' taking of Plaintiff Brown's money by issuing an unsolicited, activated debit card to Ms. Brown when she was released from the Multnomah County Detention Center on November 26, 2014. Upon release, instead of receiving the approximately $30 in cash that was in her wallet upon arrest, Plaintiff Brown was given the Numi card, a prepaid debit card loaded with her confiscated funds. Pl.'s Second Am. Compl. ("SAC") at 2, ECF No. 105. The Numi card imposed unreasonable and excessive fees for both use of the card and holding of a balance on the card. *Id*. at 3.

The case was filed on July 22, 2015, and Plaintiff's class action complaint included four counts: violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq*. (2010) (a federal statute that prohibits the issuance of prepaid cards unless done so in response to a request or application by a consumer), violation of the Oregon Unfair Trade Practices Act, and

the common law claims of conversion and unjust enrichment. Compl. at 13-15, ECF No. 1. Defendants immediately filed a Joint Motion to Compel Arbitration and also to stay the matter while the arbitration issue was pending, ECF No. 22. The Court denied the motion to compel arbitration on February 25, 2016, ECF No. 61, and the Court ordered the case to proceed to a mini-trial on the issue of arbitrability. On February 10, 2016, Defendants filed a Joint Motion to Dismiss on the merits, ECF No. 58. On April 4, 2016, Plaintiff amended her complaint, adding a claim pursuant to 42 U.S.C. § 983 for violation of the Fifth Amendment Takings Clause, and dropping the Oregon Unfair Trade Practices Act claim. First Am. Compl., ECF No. 68. Defendants refiled their Joint Motion to Dismiss on May 2, 2016, ECF No. 74. On August 25, 2016, the Court granted in part (holding that Plaintiff's EFTA claim was dismissed, and Plaintiff's Fifth Amendment Claim was not adequately pled), and denied as to Plaintiff's conversion and unjust enrichment claims. Op. and Order, ECF No. 86. Plaintiff filed a Second Amended Complaint on December 5, 2016, ECF No. 105. Defendants filed a Joint Motion to Dismiss for violation of the Fifth Amendment for failure to state a claim on February 21, 2017, ECF No. 113. The Court denied the Motion on June 7, 2017. Mins. of Proceedings, ECF No. 136. On May 4, 2017, Plaintiff filed a Motion to Enter Scheduling Order, ECF No. 125. The Court granted the motion on June 20, 2017, holding that Defendants had waived their right to a mini-trial on the issue of arbitrability, and entering a scheduling order for the remainder of the case. Mins. of Proceedings, ECF No. 140. The discovery schedule required fact discovery to be completed by February 2, 2018, and ordered that motions to compel or related discovery notices were to be filed on or before February 23, 2018. *Id.*

Discovery in this matter was largely stayed while the motion to compel arbitration, the motions to dismiss, and the motion to enter the scheduling order were pending. On February 9,

2016, Plaintiff served her First Request for Production on Defendants ("Plaintiff's First RFPs").

Discovery began in earnest in the spring of 2017 when the parties exchanged initial disclosures,

Defendants served their responses and objections to Plaintiff's First RFPs, and the parties entered

a Stipulated Protective Order, ECF No. 122. Throughout the summer of 2017, the parties

negotiated an ESI protocol, met and conferred regarding Defendants' responses and objections,

and negotiated search terms pursuant to Plaintiff's First Request for Production. Gerber Decl. Ex.

2 (Letter from Verschelden to Gerber, Aug. 18, 2017). Defendants initially produced a set of

hard copy documents, followed by productions of electronic documents that began in December

of 2017. Depositions were taken of the Plaintiff in September of 2017, and also of the

Defendants and their employees in January, February, and March of 2018.

On January 9, 2018, Plaintiff served Defendant Numi with Plaintiff's Second RFPs.

Gerber Decl. Ex. 3. The same day, the Parties filed a Joint Motion for Extension of Pretrial

Discovery Deadlines, ECF No. 145. On January 16, 2018, the Court granted in part and denied in

part that motion and set April 2, 2018[2] as the deadline for fact discovery, and April 23, 2018, as

the deadline for motions to compel. Order, ECF No. 147. Plaintiff's expert report deadline is

May 11, 2018, with all other expert disclosures and discovery deadlines dependent on that

disclosure, and slated to be completed by July 2, 2018. *Id.* Plaintiff's motion for class

certification is due on May 25, 2018, and July 9, 2018 is the deadline for dispositive motions. *Id.*

On March 2, 2018, Defendants filed an early Motion for Summary Judgment, ECF No. 148. On

---

[2] On February 27, 2018, Plaintiff completed service of a subpoena duces tecum on third party
Multnomah County. On March 6, 2018, Plaintiff filed an Unopposed Motion for Relief from Fact
Discovery Deadline, ECF No. 151, to extend the discovery deadline for the purpose of
completing the deposition of Multnomah County. On March 7, 2018, the Court extended the
discovery deadline to April 30, 2018 for the purpose of completing the Rule 30(b)(6) deposition
of Multnomah County. Order, ECF No. 153.

March 8, 2018, Plaintiff filed a Motion for Leave to Amend Complaint to Reinstate Claim Under the EFTA, ECF No. 154.

On February 8, 2018, Numi served its Responses and Objections to Plaintiff's Second RFPs.[3] Gerber Decl. Ex. 4. In summary, the RFPs that are at issue in this motion requested three categories of data from Numi concerning its debit card program: cardholder information to identify class members and their location (RFP No. 39); debit release card transactional data for cardholders (RFP No. 40); and debit release card fees charged to cardholders (RFP No. 41). This is data that Numi possesses for the class, Gerber Decl. Ex. 1, *see supra note 1*, and it is information similar to that provided by Defendants to Plaintiff in discovery for Plaintiff Danica Brown. Gerber Decl. Ex. 5 (debit card fee and transaction history for Plaintiff Brown). Plaintiff invited Numi to provide a compromise proposal so the Parties could avoid burdening the Court. *Id.* Ex. 6, at 5. Numi stated its intention to do so. *Id.* Ex. 7. Yet no compromise proposals have been forthcoming. Gerber Decl. ¶12; Ex. 7 ¶.

By refusing to produce the data Numi is preventing Plaintiff from completing merits discovery, opposing Defendants' early-filed Motion for Summary Judgment, preparing her expert report, and preparing her motion for class certification. In its February 8, 2018 Responses and Objections to Plaintiff's Second RFPs, Numi lodged the following four objections in response to RFP Nos. 39-41: (1) the information sought is "personal and private financial information from cardholders" and because a class has not been certified, Numi is obligated to "abide by the financial privacy restrictions set forth in 15 U.S.C. §§ 6801, 6802;" (2) Plaintiff is

---

[3] For the Court's convenience, the full text of the requests and responses at issue in this Motion are set forth in Appendix A to this Motion, and the citations throughout refer to this Appendix. Plaintiff's Second RFPs and Defendant Numi's Responses and Objections thereto are also attached as exhibits to counsel's declaration. *See* Gerber Decl. Exs. 3-4.

not entitled to class-wide discovery and "claims must be limited to the putative Oregon sub-classes identified in paragraph 78 of the SAC; (3) the request for this data is "premature as it requests information not required for class certification," and at the "pre-class certification stage, class discovery is limited to issues necessary to determine whether class certification is appropriate;" and (4) the request for the data is unduly burdensome as it seeks "a tremendous amount of information that is not proportional to the needs of the case at its current stage." Gerber Decl. Ex. 4, at 3-7 (Def. Resps. and Objs. to Pl.'s Second RFPs)*; see also* App. A.

Plaintiff responded to Defendants' objections by letter on February 16, 2018, wherein she explained why each of the objections were improper and requested a meet and confer to determine whether the parties were at an impasse. Gerber Decl. Ex. 6. at 5 (Letter from Gerber to Verschelden, Feb. 16, 2018). The parties met and conferred on March 1, 2018, and Numi's counsel stated on that call that it intended to proffer a compromise. Gerber Decl. ¶10. After not receiving any compromise offer, nor any follow-up correspondence, Plaintiff's counsel requested another meet and confer on March 15, 2018. *Id.* ¶ 10. During this meet and confer, Plaintiff's counsel was informed that a response would be forthcoming. *Id.* ¶ 12.  On March 20, 2018, after receiving no follow-up, Plaintiff's counsel sent a letter to Numi's counsel, George Verschelden, stating that she intended to file a motion to compel unless Numi stated that it would produce the data by March 23, and requesting that Numi consent to an expedited hearing on the motion. *Id.* Ex. 8, at 2 (Letter from Gerber to Verschelden, Mar. 20, 2018). On March 23, Numi's counsel responded stating that it had objected to producing the personal and private financial data of the putative class on "multiple occasions" that it "continued to engage in efforts to come up with a compromise," but was not in a position to offer a "compromise today" and that it "stands by its objections to producing personal and private financial data of the putative class before a class is

certified." Numi also indicated that it would not consent to an expedited hearing. Gerber Decl. Ex. 7, at 2 (Letter from Verschelden to Gerber, Mar. 23, 2018). Through its objections, correspondence, and conduct, Numi has made clear to Plaintiff that it has no intention of producing the data without being ordered by the Court to do so. Further, Numi's counsel instructed Numi not to answer questions regarding the terms of the settlement agreement at the deposition of Brad Golden. *Id.* Ex. 9 (Golden Dep. 213:21-214:4) Gerber Decl. ¶ 14. Plaintiff requests that the Court compel Defendant Numi to produce the data by no later than April 9, 2018, and answer questions regarding the terms of the settlement agreement under oath. To the extent Numi cannot produce the data by April 9, 2018, Plaintiff respectfully submits that an extension of her deadline to submit expert reports should be granted.

## IV.    RELEVANT BACKGROUND

### A.    Defendants' Debit Card Program Includes Hundreds of Facilities in Many States.

Defendants Numi and CNB issued prepaid debit cards to released arrestees around the country from approximately November 6, 2013 until January 1, 2016. Defendants offered to jail facilities seven different programs called "Prestige 1 – Prestige 7." Jail facilities selected and negotiated the Prestige program and debit card fee schedule for their arrestees. Gerber Decl. Ex. 9 (Golden Dep. 68:15-69:3, 72:11-14, Mar. 8, 2018). These seven card programs differed only as to their fee schedules. *Id.* Ex. 10; Ex. 9 (Golden Dep. 62:24-65:9). In all other respects, the card processing and fee imposition was performed on a uniform basis nationwide. *Id.* Ex. 11 (Gerhard Dep. 100:20-101:10, Jan. 11, 2018); Ex. 12. The jail facilities all provided the Numi-branded Mastercard to cardholders. *Id.* Ex. 11 (Gerhard Dep. 202:7-22). At the same time, or shortly thereafter, the cardholder's funds (held in trust at the jail) were transferred via ACH to Defendant CNB's pooled funds account. *Id.* (Gerhard Dep. 202:7-22).

The debit cards issued to Plaintiff and the putative class members were activated when issued by the jails. *Id.* (Gerhard Dep. 81:13-82:7); Ex. 13 (Mossman Dep. 86:7-10, Jan. 24, 2018). No cardholder ever filled out an application for the card, or otherwise asked for it. The card imposed unreasonable and excessive fees for both use of the card and holding of a balance on the card. ECF No. 105 at 3. In order to access their money, Plaintiff and the class members had to use the card—either at a merchant, an ATM, a bank teller, or otherwise. Using the card however subjects cardholders to myriad user fees that are automatically debited by Defendants from a cardholder's balance. Gerber Decl. Ex. 10. For example, visiting an ATM results in fees charged by both the Defendants, and also potentially the Bank sponsoring the ATM machine. *Id.* If you make an error and request from the ATM or a merchant more money than the balance on your card, you are charged a "decline" fee of $0.95. Ex. 13 (Mossman Dep. 106:19-107:4). Some users who repeatedly tried to use the card, but apparently had trouble, were charged 10 "decline" fees. Ex. 14 (Torza Dep. 191:1-3) Gerber Decl. Ex. 18. In addition to the user fees, Defendants also imposed a "maintenance fee" scheme that automatically took funds from all cardholders with a balance on the card after 2 days, 3 days, 5 days, 7 days, 180 days, or 24 months, depending on the card's fee schedule. *Id.* Ex. 10. This cycle was repeated for cardholders on either a weekly or monthly basis thereafter. No services were provided to cardholders in exchange for taking this maintenance fee. *Id.* Ex. 14 (Torza Dep. 159:5-7). If cardholders did not accept or use the card, any balance on the card is subject to Defendants' "maintenance" fees. *Id.* Ex. 9 (Golden Dep. 34:23-7). Many cardholders have their entire balance on the card depleted by the maintenance fees. *Id.* Ex. 14 (Torza Dep. 159:11-14). Ex. 9 (Golden Dep 35:2-7; Ex. 14).

To satisfy the ascertainability or definiteness inquiry of Rule 23, the class must be defined to identify the persons "(1) entitled to relief, (2) bound by a final judgment, and (3)

entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action." *Manual*

*for Complex Litigation* (Fourth) § 21.222 (2004). Because discovery has not been bifurcated,

Plaintiff seeks the identity of class (or sub-class) members and their account numbers from

Numi, and has requested records in RFP No. 39 showing all available information concerning the

identity of each individual class member, as well as their location. Defendants refuse to provide

this information, and have instead only provided placeholder "account numbers" for certain

cherry-picked fields of cardholder load data from their database. Gerber Decl. Ex. 15, at

SVC017195 (showing card loads for cardholders with placeholders for "account number" and

any other cardholder information).

**B.      Transaction and Fee Data**

Plaintiff has also requested documents relating to the fees Defendants have charged to

class members and the transaction history for the cardholders. *See Id.* Ex. 3, at 5-6 (RFP Nos. 40-

41). While Defendants have agreed to produce data concerning the total fees taken from

cardholders in aggregate, and they have produced data concerning the fee and transaction history

for named Plaintiff Brown, they nonetheless refuse to provide this very same information for

other class members. Discovery has revealed that Defendant Numi maintains this data on a

proprietary database, the data is accessible, and Numi routinely pulls this data, and uses and

analyzes the data as needed for its business purposes. First, according to the deposition testimony

of Joann Torza, Numi maintains this data in its proprietary "Holmes" database. *Id.* Ex. 14 (Torza

Dep. 27:2-15). Second, cardholder data in this database is routinely utilized by Numi when it

responds to inquiries from various jail facilities concerning card usage and fees. Numi gathered

this data when responding to FOIA requests lodged with Multnomah County about the card

program. *Id.* (Torza Dep. 220:20-11); Ex. 16. They also gathered and analyzed fee data when

promoting their program to a new jail to provide the jail with an overview of potential card usage

information. *Id.* Ex. 17 (Golden Dep. 206:7-207:24); Ex. 9. Numi also uses the data internally,

for example, in June of 2015, Numi was concerned that their fee revenue was lower than usual so

they pulled all the data for June 7, 2015, to see if they could determine the reason for the lower

than usual fee revenue and make changes to the program to increase the revenue they receive

from denial of transaction fees. *Id.* Ex. 18, at SVC 025877; *see also* Ex. 14 (Torza Dep. 182:17-

183:15, 186:1-187:1).

Plaintiff seeks this transaction and fee information so that she can analyze the monies

taken by Defendants and the fees imposed upon cardholders, which are relevant to Plaintiff's

Fifth Amendment constitutional claim, as well as her conversion and unjust enrichment claims.

As to the fees imposed on cardholders, the Court expressed concern regarding the "financial

gymnastics" that cardholders were required to engage in to access their property. *See* Gerber

Decl. Ex. 19 (Tr. of Proceedings 9:14-20, 11:01-04, 25:13-17, June 7, 2017). Without having

access to the transaction data and the fee data in combination, this analysis cannot be completed.

Similarly, Defendants assert as a defense to Plaintiff's takings claim that their fees are

"compensation for services provided." *See* Defs.' Mot. for Summ. J. at 1, 12-14, ECF No. 148.

Plaintiff therefore requires the transactional and fee data so that she can analyze the extent to

which Defendants are providing services (various transactions) to cardholders, and so that she

can compare the cost of those services to the fees charged by Defendants. Plaintiff also seeks this

information for class certification and damages purposes, and in particular, seeks to determine

the monies taken from each individual cardholder.

## C.    Testimony Concerning Settlement Agreements with Cardholders Is Relevant.

On March 17, 2014, Numi cardholder, Robert Regan, filed a class action lawsuit in

Georgia state court against Defendants Numi and CNB alleging that Defendants provided Mr.

Regan with a card that would in cost him money to use (or not use), and that the released inmate never voluntarily enrolled in a card program. Gerber Decl. Ex. 22, at CNB0001473; Ex. 23 (Shryock Dep. 104:16-21). Plaintiff Regan brought claims for declaratory and injunctive relief, unjust enrichment, conversion, and 42 USC § 1983. Numi settled Mr. Regan's individual claim in 2015, *id.* Ex. 24, at 2, but at Mr. Golden's deposition,[4] counsel instructed him not to answer questions regarding the terms of the Regan settlement.[5] Ex. 9 (Golden Dep. 213:18-214:4). The terms of this settlement are relevant to the claims of Plaintiff Brown in this matter and may help prove that the requirements of Rule 23 are satisfied[6], and the instruction to not answer was improper. Withholding access to this discovery was improper. The Ninth Circuit does not recognize a broad settlement privilege, because the discovery rules concern discovery, not admissibility. *Big Baboon Corp. v. Dell, Inc.*, No. 09-1198, 2010 WL 3955831, at *3 (C.D. Cal. Oct. 8, 2010) (citing *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151 (9th Cir. 2007)). Plaintiff asked counsel for Defendant Numi by letter on March 20, 2018 to indicate whether it intended to stand on this objection. Gerber Decl. Ex. 8. Plaintiff now moves the Court to require testimony concerning the terms of the settlement. In its March 23, 2018 letter, Numi asserted that the terms of the Regan settlement are not discoverable. *Id.* Ex. 7. To the extent the Court has concerns regarding the confidentiality of the settlement, Plaintiff proposes that the Court review the settlement agreement *in camera*, as was done in the *Big Baboon* matter.

---

[4] Counsel also sought information about the terms of this settlement from Defendant CNB, and counsel for CNB also instructed his witness not to answer the questions. Ex. 11 (Gerhard Dep. 251:16-252:21).

[5] Ex. 24 references the purported oral settlement agreement, and the range of monetary relief. Numi has thus waived the topic in its document production.

[6] According to the docket in *Regan v. Stored Value Cards, Inc.*, 2014-CV-1281-I (Ga. Super. Ct. Mar. 17, 2014), a number of putative class members attempted to intervene in the *Regan* matter pro se, and it is unclear whether those claims were resolved.

# V.    ARGUMENT

## A.    Legal Standard

Parties are entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "That sweeping mandate is meant to be broadly construed." *Pitkin v. Corizon Health, Inc.*, No. 16-2235-AA, 2017 WL 6496565, at *2 (D. Or. Dec. 18, 2017) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). Rule 26 also requires that the discovery be:

> Proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). *See also Roberts v. Legacy Meridian Park Hosp. Inc.*, 299 F.R.D. 669, 672 (D. Or. 2014). Pursuant to Rule 26, once relevance is established "the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). As the Ninth Circuit has noted, this is "a heavy burden." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Rule 37(a)(3)(B)(iv) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if: "(iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). Similarly, Rule 37(a)(3)(B)(i) provides that a

motion may be made if "a deponent fails to answer a question asked under Rule 30 or 31." Fed. R. Civ. P. 37(a)(3)(B)(i).

**B.    Defendants' Objections Are Without Merit.**

As set forth above, Defendants lodge four objections to production of Plaintiff's Second RFPs, Nos. 39-41, but Defendants *concede that the data sought is relevant* to the claims and defenses of the parties as they have lodged no relevance objections. Plaintiff Brown has thus satisfied her burden of identifying the relevance of the materials sought in RFPs Nos. 39-41, and Defendant Numi should be compelled to produce the requested documents. *See also supra* Section IV (explaining relevance of the materials sought by Plaintiff). Plaintiff Brown has also satisfied her burden to show that the Regan settlement testimony is relevant, notwithstanding Numi's arguments to the contrary.

**1.    Numi's Privacy Concerns Can Be Remedied with the Stipulated Protective Order.**

Numi Financial objects to RFP Nos. 39-41 because the requests seek "personal information and private financial information from cardholders that is inherently sensitive and squarely implicates privacy concerns." Gerber Decl. Ex. 4, at 3, 5, and 7; *see also* App. A. This objection is not well-taken because the parties entered a Stipulated Protective Order ("Protective Order") on April 24, 2017, ECF No. 122, that provides for protection of any data that may be confidential or sensitive. Defendants have never indicated that the Protective Order is not sufficiently protective of data that may be sensitive. To the extent that such concerns are animating Numi's objection, Plaintiff's counsel expressed a willingness to discuss modifications to the Protective Order. Gerber Decl. Ex. 6, at 2. Numi has proposed no modifications.

Numi also objects to production of this data pursuant to 15 U.S.C. §§ 6801, 6808, the Gramm-Leach-Bliley Act ("Act"). The Act restricts disclosure of nonpublic personal information

by financial institutions or any of their affiliates, unless such financial institution provides or has

provided to the consumer a notice that complies with Section 6803 of the title, unless certain

exceptions apply. This objection is inapposite to the requested data in this case, for several

reasons. First, while Numi claims that it is obligated to comply with the Act, it is not clear

whether Numi satisfies the statutory definition of a financial institution.[7] Nor is Numi an

"affiliate" of CNB for purposes of this statute. Second, even assuming that the Act applies to

NUMI, Plaintiff's requests fall under the Act's exemption that allows for disclosure of

nonpublic, personal information to third parties where necessary to "respond to judicial process."

15 U.S.C. § 6802(e)(8); *see also Fenske-Buchanan v. Bank of Am. N.A.*, No. 11-1656, 2012 WL

2367124, at \*2 (W.D. Wash. June 21, 2012) (holding that discovery requests fall under the

exemption to the Act where disclosure is necessary to "respond to judicial process" and granting

motion to compel production of documents subject to the Act). Third, Defendants have already

produced documents in discovery that include cardholder names and account numbers and have

therefore waived this objection. *See* Gerber Decl. Ex. 18, at SVC025877 (Email from Joann

Torza to Michele Dominguez dated June 8, 2015, attaching "1020 report" with cardholder

account numbers and cardholder names). Numi's witness, Joann Torza, testified regarding the

same cardholder information contained in this report, without objection from counsel, during her

deposition. *Id.* Ex. 14 (Torza Dep. 182:17-185:21).

---

[7] "The term "financial institution" means any institution the business of which is engaging in
financial activities as described in section 1843(k) of Title 12." 15 U.S.C. § 6809(3)(A).
Section 1843(k)(4) of Title 12 in turn describes activities that are considered to be financial in
nature. 12 U.S.C. § 1843(k)(4). Numi Financial takes the position that it never exercises
dominion or control over cardholders' funds nor does it come into contact with, or have access
to cardholder funds. *See* Gerber Decl. Ex. 20, at CNB0017981.

**2.      Defendants' Objection to Nationwide Discovery is Improper and Has Been Waived.**

Numi also objects to production of the data because RFP Nos. 39-41 "improperly seek[] information from cardholders nationwide" and Defendants claim that discovery "must be limited to the putative Oregon sub-classes identified in paragraph 78 of the Second Amended Complaint." *Id.* Ex. 4, at 3, 5, and 7; *see also* App. A. This objection is both improper and frivolous. Plaintiff's Second Amended Complaint brings claims on behalf of a nationwide class, as well as Oregon subclasses. SAC ¶¶ 77-78. Further, the Court denied Defendants' Joint Motion to Dismiss for violation of the Fifth Amendment for failure to state a claim on June 7, 2017. Mins. of Proceedings, ECF No. 136. That claim is not limited to an Oregon sub-class. Second, Defendants first lodged this objection in response to Plaintiff's First RFPs, and following a number of meet and confers, Defendants withdrew this objection. *See* Gerber Decl. Ex. 2, at 2 (Letter from Verschelden to Gerber, Aug. 18, 2017) ("That being said, SVC [Numi] will withdraw its general objection to conducting class discovery."). Numi thus intentionally waived this objection to classwide discovery no later than August of 2017. Numi's attempt to reassert this objection now cannot be countenanced. *See W.R. Grace & Co. v. Pullman, Inc.*, 446 F. Supp. 771, 775 (W.D. Okla. Dec. 30, 1976) (holding that once documents are produced, further objections are waived). Plaintiff is entitled to discovery on a nationwide basis, and Numi cannot limit its production to the Oregon sub-classes. The documents requested in RFP Nos. 39-41 are relevant and responsive to both class certification and Plaintiff's Fifth Amendment claim. Further, Defendants have lodged the purported defense of "voluntariness," and Plaintiff thus needs the requested transactional data for every cardholder to know how many cardholders managed to avoid fees and how many cardholders lost their balance due to maintenance or other fees. *See* Gerber Decl. Ex. 19 (Tr. of Proceedings 9:14-20, 11:01-04).

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY
Page - 15

The cases Numi offers in support of its objections are simply inapposite, and all concern cases with state law claims only. *See In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 702 (9th Cir. 2018) (vacating settlement where plaintiff brought only state law consumer claims); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012) (decertifying class where plaintiff brought claims only under state law). It is axiomatic that when plaintiff has brought a putative nationwide class action alleging violations of federal law, nationwide discovery is appropriate. *See Zapata v. IBP, Inc.*, No. 93-2366, 1994 WL 649322, at *3 (D. Kan. Nov. 10, 1994) (requiring defendant to produce computerized records and noting that all discovery is burdensome and burden is on party resisting discovery to demonstrate it would be unduly burdened by discovery request).

> **3.    Production of the Data is Appropriate Because Discovery Has Not Been Bifurcated, and the Court Has Ordered the Parties to Complete Class and Merits Discovery.**

Numi also objects to RFP Nos. 39-41 because the requests are "premature as [they] request[] information not required for class certification." Gerber Decl. Ex. 4, at 4, 6-7; *see also* App. A. Numi asserts that at the "pre-class certification stage, class discovery is limited to issues necessary to determine whether class certification is appropriate." *Id.* This objection is improper and should be rejected. Production of the data requested is timely and appropriate because the Court has ordered all discovery in the matter to be completed by April 2, 2018. Order, ECF No. 147. The Court's Scheduling Order did not bifurcate class and merits discovery, and counsel for Defendants did not request bifurcation at the June 20, 2017 hearing granting Plaintiff's Motion to Enter Scheduling Order. *See* Mins. of Proceedings, ECF No. 140; *see also* Gerber Decl. Ex. 21 (Tr. of Telephone Oral Arg. 15:02-14, June 20, 2017) (when asked whether the parties had any objections to the scheduling order which contemplated completion of class and merits discovery

on the same schedule, Defendants stated they had no objections). Finally, Defendants have not sought a protective order to preclude discovery into the merits of the case.

Numi asserts that the information it has provided to date in discovery is "sufficient" for class certification elements. Even if true, unless both Numi and Defendant CNB stipulate to class certification, Plaintiff is entitled to obtain information in discovery necessary for preparation of her class certification motion, and to oppose any challenges Defendants may lodge in opposition to her motion. *See Makaneole v. Solarworld Indus. Am., Inc.*, No. 14-1528-PK, 2016 WL 7856433, at *16 (D. Or. Sept. 2, 2016), *findings and recommendation adopted*, No. 14-1528-PK, 2017 WL 253983 (D. Or. Jan. 17, 2017) ("Prior (as here) to a court's decision as to class certification in a putative class action, a putative class action plaintiff is entitled to discovery necessary to determine whether class treatment of the proposed class or classes is appropriate[.]"). The information regarding the identification of class members, their location, and the nature of the monies taken, the transactions processed, and the fees charged to cardholders are relevant to both class certification and the merits of Plaintiff's claims.

Defendants also assert that at the pre-certification phase, any discovery of the "personal information and private financial information" of class members must be restricted to protect their privacy. Gerber Decl. Ex. 4, at 3, 5, 7; *see also* App. A. This assertion is misguided and improper for several reasons. First, in view of the protections offered by the Protective Order, *see supra* at V.B.1, there is no allegation that this information will not be properly protected. Second, this objection goes only to the names and account numbers (RFP No. 39), not to the transaction and fee data sought by Plaintiff (RFP Nos. 40-41). It would be possible for the parties to agree to mask or withhold the cardholder names and account numbers from this production, however, doing so would only increase delays and require additional time and expenditures later in the

case when it is time for notice to be disseminated to the class. Discovery of putative class members' personal information including names, addresses and telephone numbers is "a common practice in the class action context" and, where the requesting party has a demonstrated need for the information, it is relevant and should be produced. *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. June 29, 2011); *see also Broyles v. Convergent Outsourcing, Inc.*, No. 16-775, 2017 WL 2256773, at *4 (W.D. Wash. May 23, 2017) (holding that after plaintiff made showing of prima facie entitlement to class certification information then discovery was warranted). Here, Plaintiff seeks the information for use in support of her case in chief, as well as class certification.

### 4. Numi Fails to Substantiate Any Burden of Production.

Numi objects to RFP Nos. 39-41 as "unduly burdensome," because the Requests seek "a tremendous amount of information." Gerber Decl. Ex. 4, at 4, 6-7; *see also* App. A. Because Plaintiff has satisfied her burden of establishing relevance, Numi's objection—without any substantiation of burden—does not satisfy the requirements of Rule 26.[8]

Discovery is appropriate where it is proportional to the needs of the case and considering whether the burden or expense of the proposed discovery outweighs its likely benefit. This discovery is important to satisfy the requirements of class certification, especially to the extent that Defendants contend that proof of claims or defenses raises individual issues. Here, the discovery sought is proportional to the needs of the case given the resources of the parties, the fact that the data is solely in the possession of Numi, and the damages alleged; this is especially

---

[8] Numi also states that the request seeks information before the effective date of Numi's Prepaid Card Agreement with CNB. Gerber Decl. Ex. 4, at 4, 6-7; *see also* App. A. As discussed during the meet and confer process, Plaintiff is willing to limit any request to data concerning cardholders who received CNB-issued Numi cards. This objection is therefore not valid.

so given that all Plaintiff is requesting from Numi is production of structured data. *See Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 14-142-HZ, 2017 WL 714354, at *3 (D. Or. Feb. 21, 2017) (holding that discovery request proportional to needs of case where materials were relevant and necessary to prosecution of plaintiff's claim).

Numi's statement that the Requests seek "a tremendous amount of information" utterly fails to "'specify how the discovery request is irrelevant, overly broad, burdensome, or oppressive.'" *United States v. $1,002,327.00 in U.S. Currency Seized from Fid. Inv. Account No. xxxxx9730*, No. 13-100, 2015 WL 5098069, at *5 (D. Nev. Aug. 31, 2015) (citation omitted). *See also La. Pac. Corp.*, 285 F.R.D. at 485 (party opposing discovery has burden of showing that discovery should not be allowed and also has the burden of clarifying, explaining, and supporting its objections with competent evidence); *Zapata*, 1994 WL 649322, at *3 (asserting objection as conclusion in response to requests for production does not satisfy burden to show facts to justify objection).

Plaintiff's counsel requested this information as structured data to facilitate information transfer by hard drive. Plaintiff's counsel also repeatedly expressed a willingness to meet and confer on the format for production of the data to facilitate the prompt production and minimize the burden for Defendants. *See* Gerber Decl. Ex. 6 (Letter from Gerber to Verschelden, Feb. 16, 2018). Numi has never articulated any burden of production.

## VI.    CONCLUSION

Plaintiff Brown respectfully requests that the Court order the production of the data requested in Plaintiff's Second Request for Production of Documents, Nos. 39-41, by April 9, 2018, requests that the Court order Defendant Numi to testify regarding the terms of the Regan Settlement, and requests that the Court resolve this dispute with an expedited hearing.

DATED this 29th day of March, 2018.

**KELLER ROHRBACK L.L.P.**

s/ Laura R. Gerber
Daniel Mensher, OSB #074636
Mark A. Griffin, *Pro Hac Vice*
Laura R. Gerber, *Pro Hac Vice*
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052

**KELLER ROHRBACK, L.L.P.**
Lisa Faye Petak, *Pro Hac Vice*
801 Garden Street, Suite 301
Santa Barbara, CA  93101
lpetak@kellerrohrback.com

**BENJAMIN HAILE ATTORNEY AT LAW**
Benjamin Haile
P.O. Box 2581
Portland, OR  97208
Telephone: (503) 212-4434
attorneyhaile@gmail.com

**THE HUMAN RIGHTS DEFENSE CENTER**
Lance Weber, *Pro Hac Vice*
Sabarish Neelakanta, *Pro Hac Vice*
PO Box 1151
Lake Worth, FL  33460
Telephone: (561) 659-1873

**GISKAN SOLOTAROFF & ANDERSON LLP**
Oren Giskan, *Pro Hac Vice Forthcoming*
Raymond Audain, *Pro Hac Vice*
11 Broadway - Suite 2150
New York, NY  10004
Telephone: (212) 847-8315

*Attorneys for Plaintiff Danica Love Brown*

## APPENDIX A

PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO
DEFENDANT STORED VALUE CARDS, INC., (D/B/A NUMI FINANCIAL)

<u>REQUEST FOR PRODUCTION NO. 39:</u>

Please produce documents and/or ESI, including ESI existing as Structured Data, detailing customer identification information for all NUMI prepaid debit release cards issued by Central National Bank and Trust Company, Enid, Oklahoma from January 1, 2013 and the present. For each prepaid debit release card issued, please provide documents and/or ESI that detail the following customer information:

1. NUMI Prepaid Debit Release Card Number / Account Number[;]

2. First Name;

3. Last Name;

4. Date of Birth;

5. Address; and

6. Identification Number[.]

<u>RESPONSE:</u>

NUMI objects to this request as it seeks personal information and private financial information from cardholders that is inherently sensitive and squarely implicates privacy concerns. *See Broyles v. Convergent Outsourcing, Inc.*, Case No. C16-775-RAJ, 2017 WL 2256773 (W.D. Wash. May 23, 2017). Further, a class has not been certified in this action, and NUMI is obligated to abide by the financial privacy restrictions set forth in 15 U.S.C. §§ 6801, 6802.

NUMI objects to this request as it improperly seeks information from cardholders nationwide. Plaintiff's claims must be limited to the putative Oregon sub-classes identified in paragraph 78 of the Second Amended Complaint. *In re Hyundai and Kia Fuel Economy Litig.*, MDL No. 15-56014, 2018 WL 505343 (9th Cir. Jan. 23, 2018) (vacating nationwide settlement class where district court failed to consider differences between state laws); *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) (decertifying a class and ruling that California law could not be applied to a nationwide class); *cf. Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 967 (N.D. Cal. 2013) (recognizing that there is no cause of action for unjust enrichment under California law).

PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TESTIMONY
Page - 21

NUMI objects to this request as premature as it requests information not required for class certification. At the pre-class certification stage, class discovery is limited to issues necessary to determine whether class certification is appropriate. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985), as amended (Aug. 27, 1985); *Kamm v. California City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975); *Makaneole v. Solarworld Indus. Am., Inc.*, No. 3:14-CV-1528-PK, 2016 WL 7856433, at *16 (D. Or. Sept. 2, 2016), report and recommendation adopted, No. 3:14-CV-01528-PK, 2017 WL 253983 (D. Or. Jan. 17, 2017). *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-53 (1978) (rejecting pre-class certification discovery of identifying information of potential class members when such information is sought for notice purposes). NUMI has already produced information detailing how many release cards were loaded, and the amount of the loads, from 2013-2015. NUMI has also produced information regarding its revenues from 2013-2015. This information is sufficient for class certification elements.

NUMI objects to this request as unduly burdensome as it seeks a tremendous amount of information that is not proportional to the needs of this case at its current stage. NUMI objects to this request because the phrase "Identification Number" is vague and ambiguous. NUMI does not know what Plaintiff means by "Identification Number". NUMI also objects to this request to the extent it seeks information outside of NUMI's possession or control or before the effective date of NUMI's Prepaid Card Agreement with CNB.

REQUEST FOR PRODUCTION NO. 40:

Please produce documents and/or ESI, including ESI existing as Structured Data, detailing all transactions processed for every NUMI prepaid debit release cards issued by Central National Bank and Trust Company, Enid, Oklahoma from January 1, 2013 and the present. This request is for all transactional card data including, but not limited to all data fields previously produced for Plaintiff Danica Love Brown's NUMI card transactions (*see* SVC000273):

1. NUMI Prepaid Debit Release Card Number / Account Number;

2. Name (of card recipient);

3. Transaction Date;

4. Transaction Time;

5. Transaction Req. Code;

6. Term Number;

7. Response Code;

8. Term Seq. Number;

9.   Merchant Name;

10. Merchant ID;

11. Term. Dscr.;

12. Transaction Amount;

13. Transaction Service Charge;

14. Transaction Type Code;

15. T_Desc; and

16. Merchant Category Code[.]

<u>RESPONSE:</u>

NUMI objects to this request as it seeks personal information and private financial information from cardholders that is inherently sensitive and squarely implicates privacy concerns. *See Broyles v. Convergent Outsourcing, Inc.*, Case No. C16-775-RAJ, 2017 WL 2256773 (W.D. Wash. May 23, 2017). Further, a class has not been certified in this action, and NUMI is obligated to abide by the financial privacy restrictions set forth in 15 U.S.C. §§ 6801, 6802.

NUMI objects to this request as it improperly seeks information from cardholders nationwide. Plaintiff's claims must be limited to the putative Oregon sub-classes identified in paragraph 78 of the Second Amended Complaint. *In re Hyundai and Kia Fuel Economy Litig.*, MDL No. 15-56014, 2018 WL 505343 (9th Cir. Jan. 23, 2018) (vacating nationwide settlement class where district court failed to consider differences between state laws); *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) (decertifying a class and ruling that California law could not be applied to a nationwide class); *cf. Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 967 (N.D. Cal. 2013) (recognizing that there is no cause of action for unjust enrichment under California law).

NUMI objects to this request as premature as it requests information not required for class certification. At the pre-class certification stage, class discovery is limited to issues necessary to determine whether class certification is appropriate. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985), as amended (Aug. 27, 1985); *Kamm v. California City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975); *Makaneole v. Solarworld Indus. Am., Inc.*, No. 3:14-CV-1528-PK, 2016 WL 7856433, at *16 (D. Or. Sept. 2, 2016), report and recommendation adopted, No. 3:14-CV-01528-PK, 2017 WL 253983 (D. Or. Jan. 17, 2017). *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-53 (1978) (rejecting pre-class certification discovery of identifying

information of potential class members when such information is sought for notice purposes). NUMI has already produced information detailing how many release cards were loaded, and the amount of the loads, from 2013-2015. NUMI has also produced information regarding its revenues from 2013-2015. This information is sufficient for class certification elements.

NUMI objects to this request as unduly burdensome as it seeks a tremendous amount of information that is not proportional to the needs of this case at its current stage. NUMI also objects to this request to the extent it seeks information outside of NUMI's possession or control or before the effective date of NUMI's Prepaid Card Agreement with CNB.

REQUEST FOR PRODUCTION NO. 41:

Please produce documents and/or ESI, including ESI existing as Structured Data detailing all fees or other costs assessed against all NUMI prepaid debit release cards issued by Central National Bank and Trust Company, Enid, Oklahoma from January 1, 2013 and the present. This request is for all fee and costs transactional data, including, but not limited to all data fields previously produced for Plaintiff Danica Love Brown's NUMI card fees and costs (*see* SVC000273):

1. NUMI Prepaid Debit Release Card Number / Account Number;

2. Name (of card recipient);

2. Charge Date;

3. Plan or Program Number;

4. Charge Description; and

5. Total Amount.

RESPONSE:

NUMI objects to this request as it seeks personal information and private financial information from cardholders that is inherently sensitive and squarely implicates privacy concerns. *See Broyles v. Convergent Outsourcing, Inc.*, Case No. C16-775-RAJ, 2017 WL 2256773 (W.D. Wash. May 23, 2017). Further, a class has not been certified in this action, and NUMI is obligated to abide by the financial privacy restrictions set forth in 15 U.S.C. §§ 6801, 6802.

NUMI objects to this request as it improperly seeks information from cardholders nationwide. Plaintiff's claims must be limited to the putative Oregon sub-classes identified in paragraph 78 of the Second Amended Complaint. *In re Hyundai and Kia Fuel Economy Litig.*, MDL No. 15-56014, 2018 WL 505343 (9th Cir. Jan. 23, 2018) (vacating nationwide settlement

class where district court failed to consider differences between state laws); *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012) (decertifying a class and ruling that California law could not be applied to a nationwide class); c*f. Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 967 (N.D. Cal. 2013) (recognizing that there is no cause of action for unjust enrichment under California law).

      NUMI objects to this request as premature as it requests information not required for class certification. At the pre-class certification stage, class discovery is limited to issues necessary to determine whether class certification is appropriate. *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985), as amended (Aug. 27, 1985); *Kamm v. California City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975); *Makaneole v. Solarworld Indus. Am., Inc.*, No. 3:14-CV-1528-PK, 2016 WL 7856433, at *16 (D. Or. Sept. 2, 2016), report and recommendation adopted, No. 3:14-CV-01528-PK, 2017 WL 253983 (D. Or. Jan. 17, 2017). *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-53 (1978) (rejecting pre-class certification discovery of identifying information of potential class members when such information is sought for notice purposes). NUMI has already produced information detailing how many release cards were loaded, and the amount of the loads, from 2013-2015. NUMI has also produced information regarding its revenues from 2013-2015. This information is sufficient for class certification elements.

      NUMI objects to this request as unduly burdensome as it seeks a tremendous amount of information that is not proportional to the needs of this case at its current stage. NUMI also objects to this request to the extent it seeks information outside of NUMI's possession or control or before the effective date of NUMI's Prepaid Card Agreement with CNB.