**Megan E. Glor, OSB No. 930178**
megan@meganglor.com
Megan E. Glor, Attorneys at Law, P.C.
707 NE Knott Street, Suite 101
Portland, OR 97212
Telephone: (503) 223-7400
Facsimile: (503) 751-2071

**Chris R. Youtz,** *Pro Hac Vice*
chris@sylaw.com
**Richard E. Spoonemore**, *Pro Hac Vice*
rspoonemore@sylaw.com
SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC
3101 Western Ave., Suite 350
Seattle, Washington 98121
Telephone: (206) 223-0303
Facsimile: (206) 223-0246
*Attorneys for Plaintiff*
[additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DANICA LOVE BROWN, individually and on behalf of all others similarly situated, | NO. 3:15-cv-01370-MO |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| STORED VALUE CARDS, INC. (d/b/a NUMI FINANCIAL); and CENTRAL NATIONAL BANK AND TRUST COMPANY, ENID, OKLAHOMA, | |
| Defendants. | |

**TABLE OF CONTENTS**

I.      LOCAL RULE 7-1 CERTIFICATION .............................................................1

II.     MOTION TO CERTIFY CLASSES ..............................................................1

III.    INTRODUCTION .........................................................................................2

IV.     THE CLASS CLAIMS ..................................................................................4

V.      THE *HUMPHREY* CLASS ACTION IN OHIO ........................................5

VI.     PLAINTIFF'S MOTION FOR CLASS CERTIFICATION SHOULD BE
        GRANTED ....................................................................................................7

        A.    General Class Action Requirements.......................................................7

        B.    The Requirements For Class Certification Under
              FRCP 23(a) Are Met. ............................................................................8

              1.    Numerosity. .................................................................................8

              2.    Commonality is met where, as here, the litigation will
                    be driven by common answers to class-wide
                    questions. ....................................................................................9

              3.    Ms. Brown's claims are typical of the claims of the
                    proposed class. .........................................................................10

              4.    The class will be adequately represented.................................11

        C.    Certification Under Rule 23(b)(3) Is Appropriate. .............................12

              1.    Common, rather than individual, issues predominate
                    in this case. ...............................................................................13

              2.    A class action is superior to other methods of
                    adjudicating the claims in this case. ........................................14

VII.    CONCLUSION.............................................................................................16

VIII.   CERTIFICATE OF COMPLIANCE ...........................................................18

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor,*
  521 U. S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)..................................................15

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
  568 U.S. 455, 133 S. Ct. 1184, 185 L.Ed.2d 308 (2013).......................................................8

*Baby Neal v. Casey,*
  43 F.3d 48 (3d Cir. 1994) .........................................................................................................12

*Brown v. Stored Value Cards, Inc.,*
  953 F.3d 567 (9th Cir. 2020) .............................................................................................3, 4, 5

*Cunningham v. Multnomah Cty.,*
  2015 U.S. Dist. LEXIS 7326 (D. Or. Jan. 20, 2015) ............................................................8

*Hanlon v Chrysler Corp.,*
  150 F. 3d 1011 (9th Cir. 1998) ....................................................................................10, 12, 13

*Hanlon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) ..................................................................................................12

*Hansen v. Ticket Track, Inc.,*
  213 F.R.D. 412 (W.D. Wash. 2003) ......................................................................................12

*Humphrey v. Stored Value Cards,*
  2018 U.S. Dist. LEXIS 195811 (Nov. 16, 2018).............................................................6, 11

*Humphrey v. Stored Value Cards,*
  2019 U.S. Dist. LEXIS 55915 (N.D. Ohio April 1, 2019).................................................5, 7

*Humphrey v. Stored Value Cards,*
  355 F. Supp. 3d 638 (N.D. Ohio 2019).....................................................................................6

*In re Rubber Chems. Antitrust Litig.,*
  232 F.R.D. 346 (N.D. Cal. 2005) ...........................................................................................10

*Just Film, Inc. v. Buono,*
  847 F.3d 1108 (9th Cir. 2017) .................................................................................................17

*Mazza v. American Honda Motor Co., Inc.,*
  666 F.3d 581 (9th Cir. 2012) ...........................................................................................10, 11

*Murphy v. Precision Castparts Corp.*,
   2018 U.S. Dist. LEXIS 108252 (D. Or. June 6, 2018)........................................10

*Or. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris*,
   188 F.R.D. 365 (D. Or. 1998) ..........................................................................9

*Regan v. Stored Value Cards, Inc.*,
   85 F. Supp. 3d 1357 (N.D. Ga. 2015) ...........................................................18

*Ruiz Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ................................................................8, 15

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036, 194 L.Ed.2d 124 (2016) .......................................................15

*Villanueva v. Liberty Acquisitions Servicing, LLC*,
   319 F.R.D. 307 (D. Or. 2017) ...........................................................................9

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ...........................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541 (2011) .............................................................11

*Wilcox Dev. Co. v. First Interstate Bank of Oregon*, N.A.,
   97 F.R.D. 440 (D. Or. 1983) .............................................................................9

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ..........................................................................9

## STATUTES

15 U.S.C. § 1693 ...........................................................................................1

15 U.S.C. § 1693(b) ......................................................................................4

15 U.S.C. § 1693l-1 ......................................................................................4

15 U.S.C. § 1693l-1(b) .................................................................................5

42 U.S.C. § 1983 ..........................................................................................1

## RULES

Fed. R. Civ. P. 23(a).................................................................................2, 8

Fed. R. Civ. P. 23(a)(1)..................................................................................9

Fed. R. Civ. P. 23(a)(2) ...................................................................................................10

Fed. R. Civ. P. 23(a)(4) ..............................................................................................13, 14

Fed. R. Civ. P. 23(b)(3) ..................................................................................2, 14, 17, 19

Fed. R. Civ. P. 23(g) ......................................................................................................14

Fed. R. Civ. P. 23(g)(1)(A) ...........................................................................................14

## I.  LOCAL RULE 7-1 CERTIFICATION

Pursuant to LR 7-1(a)(1)(A), on August 13, 2020, Chris Youtz, counsel for Plaintiff Danica Brown, conferred with Eric Nystrom, counsel for Defendants Stored Value Cards, Inc. and Central National Bank and Trust Company, to discuss whether Defendants would agree that Plaintiff's claims can be certified for class treatment. Defendants would not agree to class certification of the claims and stated they would oppose Plaintiff's motion for class certification.

## II.  MOTION TO CERTIFY CLASSES

Plaintiff requests the Court certify the following national class to resolve claims under the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.*:

> All persons in the United States (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, (2) entitled to the return of money confiscated from them or remaining in their inmate accounts when they were released from custody, and (3) who had those funds returned through a debit card provided by Defendant Stored Value Cards and/or its partner banks, including Defendant Central National Bank and Trust Company, within one year prior to the filing of the original Complaint in this action, and during its pendency, that was subject to fees, charges, or restrictions.

Plaintiff also requests that the Court certify the following Oregon subclass to resolve claims (1) pursuant to 42 U.S.C. § 1983 for Defendants' violations of the Takings Clause of the Fifth Amendment to the United States Constitution, (2) for conversion, and (3) for unjust enrichment:

> All persons (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility within the state of Oregon, (2) entitled to the return of money

confiscated from them or remaining in their inmate accounts when they were released from custody, and (3) who had those funds returned through a debit card provided by Defendant Stored Value Cards and/or its partner banks, including Defendant Central National Bank and Trust Company, within six years prior to the filing of the original Complaint in this action, and during its pendency, that was subject to fees, charges, or restrictions.

Plaintiff further requests the Court to deem her an adequate representative of the Class and Subclass and appoint Megan E. Glor and Chris R. Youtz, Richard E. Spoonemore, and Sirianni Youtz Spoonemore Hamburger, and Karla Gilbride of Public Justice as counsel for both classes. As shown below, the four prerequisites prescribed by FRCP 23(a), and the predominance and superiority requirements of FRCP 23(b)(3), are met. The motion for class certification should be granted.

### III.  INTRODUCTION

Plaintiff Danica Love Brown was arrested by Portland Police during a peaceful protest in 2014. When booked into custody, she possessed $30.97 that was confiscated and held in trust for her while she was incarcerated; money she was unconditionally entitled to receive back when released from custody.

But, without her permission or knowledge, her money was transferred to an account controlled by Defendants. Those funds were then used to load a prepaid debit card handed to her when she was released a few hours after her arrest. She was required to accept the release card if she wanted her money back. If she did not accept the card, she had no access to her money.

A "monthly" maintenance fee of $5.95 – almost 20% of her funds – was taken from the release card account five days after the card was issued. Ms. Brown was not aware the money available to her had been reduced by the fee until her card was rejected for insufficient funds to complete a transaction. That also resulted in an additional charge to her account, which was later depleted through a final "maintenance fee." Decl. of Danica Love Brown in Support of Plaintiff's Motion for Class Certification, ¶¶ 3-9.

This release card was issued by Defendants Stored Value Cards, which does business under the name of Numi Financial ("Numi"), and its partner bank, Defendant Central National Bank and Trust Company ("CNB"). They market a program to detention facilities, such as the Multnomah County jail, to relieve them from the task of returning money held for inmates being released from custody. In return, Defendants obtain the right to return these funds through their fee-laden, prepaid debit cards ("release cards"). This is not an altruistic arrangement:

> There can be little doubt that Multnomah County's release card program with Numi has changed the simple government function of returning confiscated money to a released inmate into a venture in which the released inmate's money can be eroded or lost by the charge of profit-oriented fees.

*Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 576 (9th Cir. 2020).

Ms. Brown and the members of the class were required to accept the release cards issued by Numi, if they wanted to receive their money back; there was no alternative other than leaving the money with the jail. This is not the same as receiving money back in cash or with a check. Unlike those traditional ways of returning funds, the release card

issued by Defendants is encumbered with restrictions and fees. A monthly "maintenance fee" of $5.95 begins within five days after issuance of the card.

Defendants were required to return those funds without requiring Ms. Brown and the other class members to obtain their money only through the release card and under unnegotiable terms of a cardholder "agreement" that Defendants claim was provided with release cards. Defendants should not "be able without restriction to provide cards to released inmates who have not asked for them and who are likely to end up with less money than was taken from them." *Id*.

## IV.  THE CLASS CLAIMS

This class action was filed because Defendants' program violates the Electronic Fund Transfer Act ("EFTA"), which protects Ms. Brown and other consumers from abusive practices related to electronic fund transfer systems, such as debit cards. *See* 15 U.S.C. § 1693(b) ("primary objective" of the EFTA "is the provision of individual consumer rights"). The EFTA prohibits issuance of an activated prepaid debit card, such as the release card, unless a person specifically requests a card before it is issued and then only if the proposed recipient is provided a copy of the terms and conditions for the card before it is issued. *Humphrey v. Stored Value Cards*, 2019 U.S. Dist. LEXIS 55915, at *4 (N.D. Ohio April 1, 2019) (granting summary judgment for a class of former detainees holding that activated Numi release cards provided involuntarily to releasees violate 15 U.S.C. § 1693i(b) of the EFTA). *See also*, *Brown*, 953 F.3d at 574 ("Brown also states a claim for relief under section 1693i, plausibly alleging that Defendants issued unsolicited, validated prepaid cards."). Defendants also violate § 1693l-1 of EFTA, which prohibits

charging service fees to "general-use prepaid cards" unless the card has not been used for 12 months and other requirements have been met. *Id.,* § 1693l-1(b). *Brown*, 953 F.3d at 572. Here, service fees were charged within days of the issuance of the release card. These claims are asserted on behalf of the national class.

Defendants' program to illegally take money from class members also violates the Fifth Amendment's Takings Clause and raises unjust enrichment and conversion claims, which were also reinstated by the Court of Appeals, *Brown*, 953 F.3d at 576, n.7, and are asserted on behalf of the Oregon subclass.[1]

## V.  THE *HUMPHREY* CLASS ACTION IN OHIO

Ms. Brown filed her case with this court on August 22, 2015. On April 3, 2018, Amber Humphrey sued Stored Value Cards for conversion, unjust enrichment, and EFTA violations on behalf of persons within Ohio who were issued Numi release cards when they were released from custody.[2] On July 11, 2018, Humphrey amended her complaint to expand the class to "all persons in the United States" from whom defendants had "deducted any fees within six years prior to the filing of the original Complaint."[3] On August 27, 2018 Humphrey filed her motion for class certification to establish a national class for her EFTA claim and an Ohio class for her conversion and unjust enrichment claims.[4] The court granted the motion and certified an EFTA national class:

---

[1] Defendants recently filed another motion for summary judgment to dismiss these claims, which is currently pending before the Court.

[2] *Humphrey v. Stored Value Cards* (No. 1:18-CV-01050), ECF No. 1 at 1 (May 7, 2018).

[3] *Id.*, ECF No. 22 (July 11, 2018).

[4] *Id.*, ECF No. 32 (Aug. 27, 2018).

> All persons in the United States who were taken into custody
> at a jail, correctional facility, detainment center, or any other
> law enforcement facility, and upon release were issued a pre-
> activated debit card by Defendants to access a bank account
> containing any funds remaining in their inmate trust account
> within one year prior to the filing of the original Complaint in
> this action and during its pendency.

*Humphrey v. Stored Value Cards,* 2018 U.S. Dist. LEXIS 195811 at 5 (Nov. 16, 2018).

The *Humphrey* court later denied Numi's motion for summary judgment on the class's § 1693i claim under EFTA for unauthorized issuance of release cards to class members. *Humphrey v. Stored Value Cards*, 355 F. Supp. 3d 638, 642-43 (N.D. Ohio 2019). Shortly thereafter, the court announced it was considering granting summary judgment for the plaintiff class on the § 1693i EFTA claim without the need for a motion. After receiving responses from the parties, the court entered summary judgment for the class on that claim. *Humphrey v. Stored Value Cards, Inc.*, 2019 U.S. Dist. LEXIS 55915 (N.D. Ohio Apr. 1, 2019).

This order was appealed. Before any substantive work was done on the appeal, the class and the defendants settled. The court tentatively approved a modified settlement agreement and set a fairness hearing to consider final approval on October 22, 2020.[5] This settlement potentially affects a small portion of our class.

The *Humphrey* settlement agreement limits the time period for the national class to 13 months. The settlement class is defined as follows:

> All persons in the United States who were taken into custody
> at a jail, correctional facility, detainment center, or any other
> law enforcement facility, and upon release were issued a pre-

---

[5] *Id.*, ECF No. 112 (May 27, 2020).

activated debit card by Defendants to access a bank account containing any funds remaining in their inmate trust account between April 1, 2017 and April 30, 2018.

*Humphrey*, ECF No. 111-1 at 8 (Apr. 30, 2020). The settlement states the class includes approximately 180,000 individuals. *Id*.

The proposed national class in our action begins on July 22, 2014 and continues through the pendency of the case. If the settlement agreement is approved by the Ohio court, class members who received release cards during April 1, 2017 through April 30, 2018 who do not opt out of the settlement would release their EFTA claims against Numi. Thus, those individuals would not be eligible to receive payment from any judgment or settlement of our EFTA claim. However, the settlement does not affect the hundreds of thousands of individuals receiving Numi release cards outside of that 13-month period included in our national class period.

## VI.  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION SHOULD BE GRANTED

### A.    General Class Action Requirements.

A court does not rule on the merits when considering class certification. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1194-95, 185 L.Ed.2d 308, 319 (2013). "[W]e consider merits questions at the class certification stage only to the extent they are relevant to whether Rule 23 requirements have been met." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016).

FRCP 23(a) "requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to maintain a class action." *Id*. "A

plaintiff seeking to represent a class must satisfy all of the threshold requirements of FRCP 23(a) and fall within at least one of the categories identified in FRCP 23(b)." *Cunningham v. Multnomah Cty.*, 2015 U.S. Dist. LEXIS 7326, at *8 (D. Or. Jan. 20, 2015). *See Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

## B.    The Requirements for Class Certification Under FRCP 23(a) Are Met.

### 1.    Numerosity.

Rule 23(a)(1) requires that the "class [be] so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Cases from the Ninth Circuit and this district recognize a class as few as forty satisfies the numerosity requirement. *Or. Laborers-Emp'rs Health & Welfare Trust Fund v. Philip Morris*, 188 F.R.D. 365, 372 (D. Or. 1998) ("This district has held that, as a 'rough rule of thumb,' approximately forty members is sufficient to satisfy the numerosity requirement.") (*quoting Wilcox Dev. Co. v. First Interstate Bank of Oregon*, N.A., 97 F.R.D. 440, 443 (D. Or. 1983)). "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Murphy v. Precision Castparts Corp.*, 2018 U.S. Dist. LEXIS 108252, at *4-5 (D. Or. June 6, 2018), *quoting, In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005).

The number of potential class members is substantial. The settlement in the *Humphrey* case estimated approximately 180,000 class members were issued Numi release cards during the 13-month period for that settlement class. The Multnomah

County jail alone had more than 23,000 cards issued from May 2, 2014 through December 5, 2015. *See* Decl. of Arthur Olson ¶13, ECF No. 174 at 5. The numerosity requirement is easily met.

### 2. Commonality is met where, as here, the litigation will be driven by common answers to class-wide questions.

Commonality requires that "there are questions of law or fact common to the class." FRCP 23(a)(2). This requirement is "construed permissibly." *Hanlon v Chrysler Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1998). It only imposes a "limited burden" upon the plaintiff given that it "only requires a single significant question of law or fact." *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Commonality requires that the class members' claims "depend upon a common contention." *Mazza*, 666 F.3d at 588. It is enough to show "the capacity of classwide proceedings to generate common answers" to common questions of law or fact that are "apt to drive the resolution of the litigation." *Id.*; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551 (2011).

Here, several questions are common to the class exist, including: (1) Did Defendants violate EFTA by issuing a fee laden debit card funded with money obtained without permission from a consumer when that consumer did not request that card? (2) Did Defendants violate EFTA by activating the release card before providing that person the information required by the act? (3) Did defendants charge illegal "service fees" within one year after a release card was issued? (4) Did Defendants' failure to return all money taken from detainees constitute an unlawful taking of their property? (5) Did Defendants' failure to return all of the detainees' funds support claims of conversion and

unjust enrichment against Defendants? The answers to these questions resolve claims for the Plaintiff and all class members, not just a few. The commonality requirement is satisfied. *See Humphrey v. Stored Value Cards*, 2018 U.S. Dist. LEXIS 195811 at *8 (N.D. Ohio Nov. 16, 2018) ("Plaintiff's claims raise numerous questions of law and fact common to the class, such as 1) whether Defendants issued unsolicited and activated debit cards to Plaintiff and class members; 2) whether this issuance violates EFTA; and 3) whether Defendants' retention of the card fees violates Ohio law. The Court finds that these issues satisfy the commonality requirement.")

### 3.  Ms. Brown's claims are typical of the claims of the proposed class.

The test of typicality is whether (1) other members of the class have the same or similar injury, (2) the action is based on conduct which is not unique to the named plaintiff, and (3) other class members have been injured by the same course of conduct. *Hansen v. Ticket Track, Inc.*, 213 F.R.D. 412, 415 (W.D. Wash. 2003) (*citing Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Under the Rule's permissive standards, representative claims are "typical" if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). As a result, "Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Id.* at 57-58.

Ms. Brown's claims are not just typical; they are identical with other class members: (1) She and the other class members were arrested and detained at detention facilities where their personal possessions, including cash, were confiscated; (2) Without their permission or knowledge, their cash was transferred to fund debit card accounts controlled by Defendants; (3) She and the other class members had to accept fee-laden release cards to retrieve their money; (4) Defendants placed restrictions on how the card recipients could obtain their money; and (5) Ms. Brown and other class members were charged fees they never agreed to for merely accessing their money, checking the balance on the release card, or even doing nothing at all.

Ms. Brown's claims are typical of those held by the class. *See Humphrey* 2018 U.S. Dist. LEXIS 195811 at *9 ("Plaintiff satisfies the [typicality] standard. Here, Plaintiff Humphrey's claims arise from the same course of conduct—Defendants' practice of issuing allegedly unsolicited and activated debit cards at the inmate's release and charging unconsented card fees. This course of conduct is the basis of a common legal theory: that the cards' issuance violated EFTA and the fees violated Ohio law.")

### 4.    The class will be adequately represented.

The requirement of adequate representation in FRCP 23(a)(4) has two components: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Ms. Brown has more than met these requirements. Neither she nor her counsel has any conflict of interest with other class members. Youtz Decl., ¶¶8, 9; Brown Decl., ¶10;

Gilbride Decl. ¶3. She has vigorously pursued this case, defeated efforts to force her to arbitrate her claims,  fought motions to dismiss and a motion for summary judgment, successfully pursued an appeal to reinstate her claims, and is resisting yet another summary judgment motion—all this prior to this motion to certify the class. *See*, Brown Decl. ¶11.

The ability of counsel to vigorously prosecute the action on behalf of the class of counsel is subsumed under FRCP 23(g), the requirement that the Court appoint adequate class counsel. The declarations of counsel who represent Ms. Brown establish they (1) have done extensive work in addressing the particular claims in this action, including appointment as class counsel in a case against another vendor of release cards and its partner bank, (2) have far-reaching experience in class litigation, (3) are well versed in this area of the law, and (4) are willing to commit the resources necessary to vigorously this litigation. FRCP 23(g)(1)(A)(i)-(iv). *See* Youtz Decl., ¶¶3-6. This includes handling other class action cases involving inmates and consumer-related claims arising from transactions with prisoners. Youtz Decl., ¶5. *See also* Youtz Decl., ¶9 (regarding Ms. Glor's qualifications) and the Declaration of Karla Gilbride in Support of Plaintiff's Motion for Class Certification (regarding Ms. Gilbride's qualifications).

The requirements of FRCP 23(a)(4) and FRCP 23(g) are satisfied.

## C.    Certification Under Rule 23(b)(3) Is Appropriate.

Rule 23(b)(3) permits a class action when (1) questions of law or fact common to the class members predominate over questions affecting individual members, and

(2) such an action is superior to other available methods of adjudicating the controversy. Both requirements are satisfied.

### 1.    Common, rather than individual, issues predominate in this case.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U. S. 591, 623, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009). "The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "An individual question is one 'where members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045, 194 L.Ed.2d 124, 134 (2016) (citations omitted).

The universal question in this case is whether Defendants improperly took funds from class members to issue unrequested prepaid debit cards instead of simply returning their money to them. Defendants' program, however, was not developed to easily return money to class members but, rather, to profit from any delay or difficulty class members had in trying to retrieve their money from these cards. Defendants' conduct raises questions of liability under the EFTA that are uniform among the class members. The same is true for the takings claim and the common law conversion and unjust enrichment claims. The transactions are uniform among the class members: money is obtained from

the class members and returned to them only in the form of a prepaid debit card with

restrictions and fees. Class members are not allowed to choose whether to receive cash

instead of the card when they are released. These common facts and associated legal

issues dominate the case over any claim of individualized issues that may be raised by

Defendants. The predominance requirement is satisfied.

Numi was sued in *Humphrey* for the same program at issue in this case. In its order

certifying a class in that case, the court found that common issues predominated:

> The Plaintiff's main allegations apply to all class members: that
> Defendants issued unsolicited activated debit cards and
> assessed fees on those cards. The resolution of the essential
> legal questions arising from these allegations—whether the
> cards are governed by EFTA, whether their unsolicited
> issuance violates EFTA, and whether Defendants' retention
> of fees violates Ohio law—will also affect all class members in the
> same fashion. Class wide damages resolution is also possible,
> because Defendants' records contain information detailing the
> fees charged to each class member.

*Humphrey,* 2018 U.S. Dist. LEXIS 195811 at *13. Common questions prevail over

individual issues.

> **2.    A class action is superior to other methods of adjudicating the
> claims in this case.**

A class action is also the superior method of resolving the claims in this case.

FRCP 23(b)(3) recites that a court should consider: (1) the interest of members of the class

in individually controlling the prosecution or defense of separate actions; (2) the extent

and nature of any litigation concerning the controversy already commenced by or against

members of the class; (3) the desirability or undesirability of concentrating the litigation

of the claims in the particular forum; (4) the difficulties likely to be encountered in the management of a class action. All these factors favor certification.

First, it is doubtful that any releasee would want to control this litigation or bring an individual claim because of the small amount of money involved. In affirming an order certifying a class, the Ninth Circuit recognized that "If a class action is not superior, then individual actions must carry the day" and the "risks, small recovery, and relatively high costs of litigation" make it unlikely that class members would individually pursue their claims. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). "These considerations are at the heart of why the Federal Rules of Civil Procedure allow class actions in cases where Rule 23's requirements are satisfied. This case vividly points to the need for class treatment. The individual damages of each merchant are too small to make litigation cost effective in a case against funded defenses and with a likely need for expert testimony." *Id*.

The individual amounts of money involved are usually small, sometimes consisting of just a few dollars. Ms. Brown had approximately $30 in her possession when she was arrested. The plaintiff in the *Humphrey* case had $26.42 remaining in her account when she was released. The costs of bringing individual actions would far exceed the amounts at stake. Thus, it would be improbable that large numbers of class members would possess the initiative or funds to litigate these claims.

As for the second factor, similar claims were brought against Numi in other jurisdictions, as shown by the *Humphrey* case and *Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357 (N.D. Ga. 2015). As discussed earlier, the *Humphrey* case settled, and the

*Regan* case settled before a class was certified after the Fifth Circuit affirmed the decision denying Numi's motion to compel arbitration. Other than offering precedential support, those cases do not affect the thousands of class members involved in our litigation whose claims are not released in the *Humphrey* case.

The third factor, desirability of concentrating the litigation in a particular forum, weighs in favor of class action treatment because the class representative lives in Multnomah County and the subclass consists solely of Oregon residents.

The fourth factor—difficulties in managing the class action—also supports class action treatment. It is likely that managing this single class action will require fewer judicial resources than managing thousands of separate lawsuits. This case does not present any unique case management issues, and the members of the class should be ascertainable from the records maintained by the Defendants or the facilities where they were detained.

All requirements of FRCP 23(b)(3) are met, and the national class and the Oregon subclass should be certified by the Court.

### VII.  CONCLUSION

For the reasons provided above, the Court should certify the proposed Class and Subclass, as defined in Section II, *above*. Plaintiff Danica Brown should be appointed as the class representative, and Megan E. Glor and Chris R. Youtz, Richard E. Spoonemore, and Sirianni Youtz Spoonemore Hamburger and Karla Gilbride of Public Justice should be appointed as class counsel for both classes.

DATED:  September 30, 2020.

MEGAN E. GLOR, ATTORNEYS AT LAW, P.C.
Megan E. Glor, OSB No. 930178
megan@meganglor.com
707 NE Knott Street, Suite 101
Portland, OR  97212
Tel. (503) 223-7400
Fax (503) 751-2071

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

s/ Chris R. Youtz

Chris R. Youtz, *Pro Hac Vice*
chris@sylaw.com
Richard E. Spoonemore, *Pro Hac Vice*
rick@sylaw.com
3101 Western Avenue, Suite 350
Seattle, WA  98121
Tel. (206) 223-0303
Fax (206) 223-0246

PUBLIC JUSTICE
Karla Gilbride, *Pro Hac Vice*
kgilbride@publicjustice.net
1620 L Street NW, Suite 630
Washington, D.C. 20036
Tel. (202) 861-5241
Fax (202) 232-7203

HUMAN RIGHTS DEFENSE CENTER
Daniel L. Marshall, *Pro Hac Vice*
dmarshall@humanrightsdefensecenter.org
P.O. Box 1511
Lake Worth, FL 33460
Tel. (561) 360-2523
Fax (561) 828-8166

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 4472 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED: September 30, 2020.

*s/ Chris R. Youtz*

Chris R. Youtz, *Pro Hac Vice*
chris@sylaw.com