IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DANICA LOVE BROWN,** individually and on behalf of all others similarly situated, <br><br> Plaintiff(s), <br><br> v. <br><br> **STORED VALUE CARDS, INC.** (d/b/a **NUMI FINANCIAL**); and **CENTRAL NATIONAL BANK AND TRUST COMPANY, ENID OKLAHOMA,** <br><br> Defendants. | No. 3:15-cv-01370-MO <br><br> OPINION AND ORDER |

**MOSMAN, J.,**

Before me is Plaintiff Danica Love Brown's Motion for Class Certification [ECF 230]. For the reasons discussed herein, I GRANT in part and DENY in part Ms. Brown's motion.

## BACKGROUND

The parties are intimately familiar with the facts of this matter, which has been ongoing for close to six years. I do not repeat them here.

In the present motion, Ms. Brown asks me to certify two classes. First, she requests certification of the following national class to resolve the Electronic Fund Transfer Act ("EFTA") claims:

1 – OPINION AND ORDER

> All persons in the United States (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility, (2) entitled to the return of money confiscated from them or remaining in their inmate accounts when they were released from custody, and (3) who had those funds returned through a debit card provided by Defendant Stored Value Cards and/or its partner banks, including Defendant Central National Bank and Trust Company, within one year prior to the filing of the original Complaint in this action, and during its pendency, that was subject to fees, charges, or restrictions.

Pl.'s Mot. for Class Certification [ECF 230] at 1. Second, she requests certification of the following Oregon subclass to resolve her remaining claims:

> All persons (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility within the state of Oregon, (2) entitled to the return of money confiscated from them or remaining in their inmate accounts when they were released from custody, and (3) who had those funds returned through a debit card provided by Defendant Stored Value Cards and/or its partner banks, including Defendant Central National Bank and Trust Company, within six years prior to the filing of the original Complaint in this action, and during its pendency, that was subject to fees, charges, or restrictions.

*Id.* at 1–2.

Additionally, Ms. Brown asks me to deem her an adequate representative and to appoint class counsel. *Id.* at 2.

At a hearing on January 4, 2021, I instructed the parties to inform me via email of any outstanding issues related to the motion to certify. *See* Mins. of Proceedings [ECF 241]. I then held another hearing on February 8, 2021, after which I took the motion to certify under advisement. *See* Mins. of Proceedings [ECF 248].

## DISCUSSION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682 (1979)). "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met

the prerequisites of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (quoting *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir. 1996)). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

Under Rule 23, a plaintiff may sue on behalf of all members of a class only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* 23(b)(3). "The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

"When appropriate, an action may be brought or maintained as a class action with respect to particular issues" and "a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(4)–(5). "An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." *Id.* 23(c)(1)(B). The class-certification order "may be altered or amended before final judgment." *Id.* 23(c)(1)(C).

I.  **Unchallenged and Resolved Issues**

Three aspects of class certification are unchallenged. First, Ms. Brown persuasively argues that Rule 23(a)(1)'s numerosity requirement is satisfied, Pl.'s Mot. for Class Certification [ECF 230] at 8–9, and Defendants raise no arguments in rebuttal, Defs.' Resp. [ECF 235] at 5–6. I agree with Ms. Brown and hold that Rule 23(a)(1) is satisfied. Second, by not arguing otherwise, Defendants implicitly concede that there are questions of law or fact common to the proposed class. I agree that at least a few common questions exist, and I hold that Rule 23(a)(2) is satisfied. *See Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact."). Third, Ms. Brown provides ample, unchallenged evidence that her proposed class counsel meets Rule 23(g)'s requirements. Chris R. Youtz Decl. [ECF 231]; Karla Gilbride Decl. [ECF 232]. I agree that those requirements are satisfied, and I APPOINT the following as class counsel: Chris R. Youtz, Richard E. Spoonemore, and the law firm Sirianni Youtz Spoonemore Hamburger; Megan E. Glor of Megan E. Glor, Attorneys at Law, P.C.; and Karla Gilbride of Public Justice, P.C.

Additionally, one of Defendants' challenges has been resolved. Defendants argue that Ms. Brown's "proposed class definition impermissibly asserts claims against entities who are not parties to this action, many of which are time-barred." Defs.' Resp. [ECF 235] at 6. Specifically, Defendants take issue with the following phrase in Ms. Brown's proposed class definitions: "persons . . . who had [their] funds returned through a debit card provided by Defendant Stored Value Cards *and/or its partner banks*, including Defendant Central National Bank and Trust Company." *Id.* at 15. Ms. Brown, however, has clarified that she is not asserting any claims against a nonparty. Pl.'s Reply [ECF 237] at 25–26. To avoid any further confusion, I will

remove the reference to the unnamed partner banks in Ms. Brown's proposed class definitions before I certify any class.

Finally, Ms. Brown notes that there may be some overlap between the putative class in this case and the settlement class in *Humphrey v. Stored Value Cards*, No. 1:18-CV-01050 (N.D. Ohio). But she agrees that members of the settlement class "who do not opt out of the settlement would release their EFTA claims against Numi" and "would not be eligible to receive payment from any judgment or settlement" in the case before me. Pl.'s Mot. for Class Certification [ECF 230] at 7.

## II.     Remaining Issues

That leaves four challenges to address now. Three of those challenges involve whether common questions of law or fact predominate. First, Defendants argue that "all members of the putative class, except plaintiff, are subject to arbitration" and challenges to the arbitration agreement "will require countless mini-trials with respect to contract formation." Defs.' Resp. [ECF 235] at 5. Second, Defendants argue that "many members of the putative class affirmatively elected to receive their cards without incurring any fees prohibited by the EFTA, which means resolution of the EFTA claims will also require a case-by-case examination of the facts applicable to each class member." *Id.* at 5–6. Third, Defendants argue that "determining the viability of plaintiff's takings, conversion, and unjust enrichment claims also hinges upon how each putative class member received and used the card and, thus, requires individualized inquiries." *Id.* at 6. The fourth and final challenge involves whether Ms. Brown's claims are typical and whether she is an adequate representative of the class. *Id.* Although not specifically discussed in their briefing, the crux of Defendants' four remaining challenges, taken together, is

that a class action is *not* superior to other available methods for fairly and efficiently adjudicating this controversy.

I discuss the remaining challenges in turn.

### A. Predominance

"A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3). While Rules 23(b)(1) and (b)(2) involve situations in which class-action treatment is typically appropriate, Rule 23(b)(3) "is designed for situations in which class-action treatment is not as clearly called for." *Comcast*, 569 U.S. at 34 (internal quotation marks omitted) (quoting *Wal-Mart*, 564 U.S. at 362). "If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id.* "But the rule does not require a plaintiff seeking class certification to prove that each element of their claim is susceptible to classwide proof, so long as one or more common questions predominate." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020) (internal quotation marks and citation omitted). The "district court must find by a preponderance of the evidence that the plaintiff has established predominance under Rule 23(b)(3)." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 784 (9th Cir. 2021).

#### 1. Arbitration

Defendants argue that the members of the putative class are subject to a "very broad" arbitration agreement, which they "assented to . . . by accepting and using their cards." Defs.' Resp. [ECF 235] at 7. They argue that "contract formation [is] a highly individualized factual inquiry" and "a matter of state law." *Id.* at 8. In response, Ms. Brown disputes the argument that contract formation is a highly individualized inquiry, contending that two issues are common to

members of the putative class: (1) whether there was consideration to support the agreement, and (2) whether there was mutual assent to the terms of the agreement. Pl.'s Reply [ECF 237] at 15. Ms. Brown seems to suggest that the law governing those two issues does not vary by state, but she fails to provide any information or analysis to support that suggestion.

To determine whether a valid arbitration agreement exists, I must "apply ordinary state-law principles that govern the formation of contracts." *Reichert v. Rapid Invs., Inc.*, 826 F. App'x 656, 657 (9th Cir. 2020) (internal quotation marks and citation omitted). Even when the issues presented in a class action hinge on state law, it may be appropriate to certify a nationwide class, so long as the governing law does not materially differ by state. *See Mazza*, 666 F.3d at 594. But Ms. Brown, who bears the burden of demonstrating that class certification is appropriate, fails to show that this is the case here. And, at least on the issue of mutual assent, the law of at least some states demands an individualized factual inquiry. *See, e.g.*, *Bennett v. Farmers Ins. Co. of Or.*, 26 P.3d 785, 792 (Or. 2001) ("Mutual assent, or what historically was considered as the 'meeting of the minds' requirement, may be expressed in words or inferred from the actions of the parties. Whether a statement or act is a manifestation of assent to a modification is a question of fact for the jury." (internal citation omitted)). In fact, in addressing this very issue, the Ninth Circuit recently reversed the district court for failing to "properly consider[] all relevant facts and circumstances specific to [plaintiff]." *Reichert*, 826 F. App'x at 657. Thus, on the record I have in front of me, I find that it is inappropriate to litigate the issue of mutual assent on a class-wide basis.

That leaves the issue of consideration. "'Consideration' is that which one party provides to the other in exchange for entering into the contract." *Moro v. State*, 351 P.3d 1, 20 n.18 (Or. 2015). "Consideration is defined as some right, interest, profit or benefit or some forbearance,

detriment, loss or responsibility given, suffered or undertaken by the other." *Homestyle Direct, LLC v. Dep't of Human Servs.*, 311 P.3d 487, 492–93 (Or. 2013) (internal quotation marks and citation omitted). Ms. Brown argues that "returning money via a fee-laden release card to meet a statutory obligation to return the funds cannot constitute consideration that turns the cardholder agreement into a binding contract, including its arbitration provision." Pl.'s Reply [ECF 237] at 15; *see also Sw. Or. Pub. Def. Servs., Inc. v. Dep't of Revenue*, 817 P.2d 1292, 1298 (Or. 1991) (explaining that under the "pre-existing duty" rule, "doing what one is already bound to do is not a consideration sufficient to support a contract" (internal quotation marks and citation omitted)). Unlike the issue of mutual assent, I find that this issue can be resolved without individualized factual inquiries and thus may be appropriately litigated on a class-wide basis.

As with the issue of mutual assent, however, Ms. Brown also did not brief whether the consideration analysis varies by state. In fact, neither party provided a state-by-state analysis of any issue of contract formation. For this reason, I deny Ms. Brown's request to certify a nationwide class. Instead, I will certify an Oregon subclass (defined below). If, upon later briefing, I conclude that Defendants' arbitration argument fails under Oregon law, I will have the parties brief whether I should reach the same conclusion under the laws of other states.

   2.   **EFTA**

Defendants argue that Ms. Brown's "claims under the EFTA are not suited for class-wide adjudication because an individualized factual inquiry will be required to determine whether and to what extent each asserted section of the EFTA was violated with respect to each putative class member." Defs.' Resp. [ECF 235] at 9. Defendants provide two examples. First, Section 1693i of the EFTA prohibits the issuance of an *unsolicited* card. 15 U.S.C. § 1693i(a)(1). Thus, if any class member requested a card, Defendants did not violate this section as to that class member.

Second, Section 1693*l*-1 of the EFTA prohibits the imposition of various fees. *Id.* § 1693*l*-1(b)(1). According to Defendants, a fee that is never incurred cannot be said to have been imposed—and even if it could, a class member who did not incur any fees lacks Article III standing. I address Defendants' two examples in turn.

### a) Section 1693i

I do not read Ms. Brown's briefing as an attempt to define the class to include those who requested a release card (assuming for the sake of argument that this ever happened). As an example of a common question, Ms. Brown asks: "Did Defendants violate EFTA by issuing a fee laden debit card funded with money obtained without permission from a consumer *when that consumer did not request that card?*" Pl.'s Mot. for Class Cert. [ECF 230] at 9 (emphasis added). Elsewhere, Ms. Brown states: "The universal question in this case is whether Defendants improperly took funds from class members to issue *unrequested* prepaid debit cards instead of simply returning their money to them." *Id.* at 13 (emphasis added); *see also id.* at 14 ("Class members are not allowed to choose whether to receive cash instead of the card when they are released."). This appears to be the Ninth Circuit's understanding of her theory as well, as evidenced by the following statement: "Numi is entitled to fair compensation for its services, *but that does not mean that it should be able without restriction to provide cards to released inmates who have not asked for them* and who are likely to end up with less money than was taken from them." *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 576 (9th Cir. 2020) (emphasis added).

In an email to the court after the January 4 hearing, Defendants appear to have softened their stance, instead questioning whether "the EFTA class definition [must] include only those individuals who did not solicit a card."

The parties appear to be on the same page. This case involves *unsolicited* release cards. Accordingly, I will define the class to include only those who did not request a card, thereby avoiding individual inquiries into whether or not each member of the class solicited a card.

### b) Section 1693*l*-1

Defendants argue that this section of the EFTA "prohibits only the actual imposition of a dormancy fee," and "many putative class members who received release cards that were subject to fees used the cards without incurring any such fees." Defs.' Resp. [ECF 235] at 9. According to Defendants, "to the extent a putative class member received a release card but did not incur any dormancy fees as a result, there was no violation of section 1693*l*-1 with respect to that person." *Id.* As a fallback argument, Defendants claim that class members who did not incur any fees lack standing. *Id.* at 10. I address these arguments in turn.

I reject Defendants' primary argument. Defendants attempt to limit the reach of the statute in a way that is unsupported by the plain language and runs counter to the overarching scheme of the EFTA. The statute makes it "unlawful for any person *to impose* a dormancy fee, an inactivity charge or fee, or a service fee with respect to a . . . general-use prepaid card." 15 U.S.C. §1693*l*-1(b)(1).[1] A fee is "imposed" when it is established—before it has been incurred or paid. *See Impose*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/impose (last visited June 7, 2021) (defining "impose" as "*to establish* or apply by authority," such as "*impose* a tax" (first emphasis added)); *Ponderosa Homes, Inc. v. City of San Ramon*, 29 Cal. Rptr. 2d 26, 30 (Cal. Ct. App. 1994) ("There is a logical distinction between the act of imposing something and the act of complying with that which has been

---

[1] Defendants appear to limit their argument to the imposition of dormancy fees.

10 – OPINION AND ORDER

imposed."). For example, Congress has imposed an income tax, and this is true whether or not everyone pays it.

Additionally, the EFTA contemplates recovery by those who have not suffered actual damages. Of course, a consumer may recover "any actual damage." 15 U.S.C. § 1693m(a)(1). But a consumer may also recover statutory damages. In any individual action, a consumer may recover "an amount not less than $100 nor greater than $1,000," as well as "the costs of the action, together with a reasonable attorney's fee." *Id.* §§ 1693m(a)(2)(A), (a)(3). More relevant for our purposes, a successful class of consumers may recover "the lesser of $500,000 or 1 per centum of the net worth of the defendant," along with attorney fees and costs. *Id.* §§ 1693m(a)(2)(B), (a)(3). These statutory remedies align with Congress's "primary objective": "the provision of individual consumer rights." *Id.* § 1693(b). And there is no evidence that a consumer must suffer actual damages to "unlock" the right to statutory damages. *See In re Regions Bank ATM Fee Notice Litig.*, No. 2:11-MD-2202-KS-MTP, 2011 WL 4036691, at *3 (S.D. Miss. Sept. 12, 2011) (holding that the EFTA's plain language "makes clear" that it was not Congress's intent to limit statutory damages to those who suffered actual damages). Thus, I hold that actual damages are not a prerequisite to recovery, and I reject Defendants' suggestion to the contrary.

I also reject, at this stage of the proceedings, Defendants' fallback argument that those who suffered no actual damages lack constitutional standing. Defendants do not allege that Ms. Brown lacks standing. Instead, they allege that members of the putative class who did not suffer actual damages lack standing. "The difficulty with Defendants' argument is that it conflates standing and class certification." *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015). The Ninth Circuit has "adopt[ed] the class certification approach." *Id.* at 1262. Under this approach,

"once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Id.* at 1261–62 (quoting 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 2:6 (5th ed.)). "[A]ny issues regarding the relationship between the class representative and the passive class members—such as dissimilarity in injuries suffered—are relevant only to class certification, not to standing." *Id.* at 1262 (quoting NEWBERG ON CLASS ACTIONS § 2:6). The "standing" issue raised by Defendants is really an issue of typicality and adequacy of representation. *See id.* at 1262–63. I address those issues below.

### 3. Takings Challenge and State-Law Claims

As I discussed in my Opinion and Order denying summary judgment, Ms. Brown's takings challenge and state-law claims all hinge on whether she could have reasonably avoided the fees. *See* Op. & Order [ECF 245]. This is a highly individualized and fact-specific inquiry, which I have already ruled is not susceptible to summary judgment. Instead, a jury will have to decide whether, considering the circumstances, each member of the putative class could have avoided the fees. To the extent these claims are subject to questions of law or fact common to class members, I have already ruled on them. All that remains are questions of fact that will vary among individual members. Accordingly, I decline to certify Ms. Brown's requested Oregon subclass on these issues. *See* Fed. R. Civ. P. 23(b)(3).

### B. Typicality and Adequacy of Representation

Ms. Brown must establish that her claims and defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of

conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Typicality may not be satisfied if the class representative's "unique background and factual situation require[] him to prepare to meet defenses that [are] not typical of the defenses which may be raised against other members of the proposed class." *Id.* (internal quotation marks and citation omitted).

Ms. Brown must also establish that she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Specifically, she must show that she has no "conflicts of interest with other class members," and that she will "prosecute the action vigorously on behalf of the class." *Ellis*, 657 F.3d at 985 (internal quotation marks and citation omitted).

Defendants argue that Ms. Brown is not typical of the class and cannot adequately represent the class because she is the only class member not subject to the arbitration agreement. Defs.' Resp. [ECF 235] at 17. Specifically, they argue: "Because defendants have waived their right to arbitrate only with respect to plaintiff, her claims are not typical of the claims of putative class members and, due to her unique position, she cannot adequately represent the interests of her proposed class." *Id.* I reject this argument and fully agree with Ms. Brown:

> Defendants claim [Ms. Brown] cannot serve as a class representative because she successfully kept her claims in court, which Defendants contend makes her atypical. One of Ms. Brown's goals as a class representative, however, is to successfully defend the class from Defendants' efforts to compel arbitration as she did when their motion to compel was brought against her personally. Her interests are totally aligned with those of the class. She does not become atypical because of her success.

Pl.'s Reply [ECF 237] at 4. I agree that Defendants may not "disqualify a named plaintiff who meets the requirements for typicality by simply waiving their arbitration claims against her." *Id.* at 6. As to the arbitration provision, I find that Ms. Brown is typical of other members of the

putative class and will prosecute the action vigorously on the class's behalf. *See* Danica Love Brown Decl. [ECF 233] ¶ 11.

I am, however, troubled by the fact that Ms. Brown suffered actual damages while other putative class members did not. While the standing issue is not currently before me, as explained earlier, it is nevertheless true that "each member of a class certified under Rule 23 must satisfy the bare minimum of Article III standing at the final judgment stage of a class action in order to recover monetary damages in federal court." *See Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1023 (9th Cir. 2020). To prove standing, a plaintiff must establish (1) that he or she has suffered an injury in fact, (2) that there is a causal connection between the injury and the conduct complained of, and (3) that the injury is likely to be redressed by a favorable decision. *Hall v. U.S. Dep't of Agric.*, 984 F.3d 825, 833 (9th Cir. 2020). Defendants have raised the concern that those members of the putative class who did not suffer actual damages lack standing because they did not suffer a concrete injury. *See* Defs.' Resp. [ECF 235] at 10 (citing *Spokeo, Inc. v. Robins* (*Spokeo II*), 136 S. Ct. 1540 (2016)). Thus, there is a significant standing issue looming in this case. While the merits of that issue are not currently before me, Defendants raise a valid concern that would need to be addressed at some point in this litigation, assuming I were to certify the precise class Ms. Brown has proposed.

Until recently, in the Ninth Circuit at least, "the violation of a statutory right [was] usually a sufficient injury in fact to confer standing." *See Robins v. Spokeo, Inc.* (*Spokeo I*), 742 F.3d 409, 412 (9th Cir. 2014), *vacated*, 136 S. Ct. 1540. The Supreme Court, however, has since clarified what must be shown to establish Article III standing in this context. *See Spokeo II*, 136 S. Ct. 1540.

The plaintiff in *Spokeo* sought to bring a class action based on an alleged violation of the Fair Credit Reporting Act of 1970 ("FCRA"). *Id.* at 1544. "The FCRA imposes a host of requirements concerning the creation and use of consumer reports," including the requirement that consumer reporting agencies "'follow reasonable procedures to assure maximum possible accuracy of' consumer reports." *Id.* at 1545 (quoting 15 U.S.C. § 1681e(b)). Plaintiff filed suit after he learned that some information is his report was incorrect. *Id.* at 1546. Like the EFTA, the FCRA allows a plaintiff to recover actual damages or statutory damages, plus costs and attorney fees. *Id.* at 1545. The district court held that plaintiff had not alleged an injury in fact and dismissed the case for lack of standing. *Id.* at 1546. The Ninth Circuit reversed, reasoning in part that "the violation of a statutory right is usually a sufficient injury in fact to confer standing." *Id.* (internal quotation marks and citation omitted).

The Supreme Court reversed, holding that the Ninth Circuit conducted an incomplete injury-in-fact analysis. *Id.* at 1545. The Court began by observing that Congress may not "erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 1547–48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)). To satisfy Article III's injury-in-fact requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). For an injury to be "concrete," it must be "real," not "abstract." *Id.*

The Supreme Court held that the Ninth Circuit failed to analyze whether plaintiff's alleged injury was "concrete." *Id.* at 1548. The Court reiterated "that Congress may 'elevate to

the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* at 1549 (quoting *Lujan*, 504 U.S. at 578). However, the Court clarified that this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* "[A] bare procedural violation, divorced from any concrete harm" would not "satisfy the injury-in-fact requirement of Article III." *Id.* As a concrete example of this abstract discussion, the Court explained:

> In the context of this particular case, these general principles tell us two things: On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, [plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Id.* at 1550. The Supreme Court remanded the case to the Ninth Circuit to determine whether plaintiff's alleged injury was sufficiently concrete. *Id.*

On remand, the Ninth Circuit adopted a two-part test to determine when a statutory violation, standing alone, establishes concrete harm. *Robins v. Spokeo, Inc.* (*Spokeo III*), 867 F.3d 1108, 1113 (9th Cir. 2017). First, the court must determine "whether the statutory provisions at issue were established to protect [plaintiff's] concrete interests (as opposed to purely procedural rights)." *Id.* This analysis is "guided by both Congress's judgment and historical practice." *Id.* at 1115. Second, the court must determine "whether the specific procedural violations alleged in [the] case actually harm, or present a material risk of harm to, such interests." *Id.* at 1113.

Satisfying the two-part test laid out in *Spokeo III* is the battle that looms for members of the putative class who suffered no actual damages. At this stage, I express no opinion as to how that battle would be resolved. But I do find that Ms. Brown's claim is not typical of the claims of those members who suffered no actual damages. The members who suffered no actual damages will have to prepare to meet a standing defense that Ms. Brown will never have to face.[2] Likewise, I am unpersuaded that Ms. Brown will have sufficient motivation to prosecute this action vigorously on behalf of those who did not suffer actual damages. Quite simply, Ms. Brown has no stake in the outcome of a thorny issue that could wipe out a significant portion of the putative class. Accordingly, I find that Ms. Brown may not sue as representative party on behalf of those members who suffered no actual damages, and I will exclude them from the class.

### III. The Class

Based on the foregoing, I certify the following Oregon class:

> All persons (1) taken into custody at a jail, correctional facility, detainment center, or any other law enforcement facility within the state of Oregon, (2) entitled to the return of money confiscated from them or remaining in their inmate accounts when they were released from custody, and (3) who had those funds returned through a debit card provided by Defendant Stored Value Cards and/or its partner bank, Defendant Central National Bank and Trust Company, despite never having requested nor applied for a debit card, within one year prior to the filing of the original Complaint in this action, and during its pendency, and (4) who incurred fees or charges. Those who satisfy these four criteria but who received a debit card from April 1, 2017, to April 30, 2018, and did not opt out of the settlement class in *Humphrey v. Stored Value Cards*, No. 1:18-CV-01050 (N.D. Ohio), are excluded from this class.

At issue will be the EFTA claims and the arbitration defense. I find that a class action is a superior method to resolve those issues, and resolving them on a statewide basis will move the

---

[2] Compare this to the arbitration defense, which all members of the putative class, including Ms. Brown, had to or will have to overcome.

ball forward in this litigation. If Ms. Brown defeats Defendants' arbitration defense, the parties will then litigate whether she would defeat the defense for similar reasons under the law of every state.

## CONCLUSION

For the reasons discussed, I GRANT in part and DENY in part Ms. Brown's Motion for Class Certification [ECF 230].

IT IS SO ORDERED.

DATED this  8   day of June, 2021.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge