**Megan E. Glor, OSB No. 930178**
megan@meganglor.com
MEGAN E. GLOR, ATTORNEYS AT LAW, P.C.
707 NE Knott Street, Suite 101
Portland, OR 97212
Telephone: (503) 223-7400
Facsimile: (503) 751-2071

**Chris R. Youtz,** *Pro Hac Vice*
chris@sylaw.com
**Richard E. Spoonemore**, *Pro Hac Vice*
rspoonemore@sylaw.com
SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC
3101 Western Ave., Suite 350
Seattle, WA 98121
Telephone: (206) 223-0303
Facsimile: (206) 223-0246
**Attorneys for Plaintiff / Oregon Class**
[additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DANICA LOVE BROWN, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>STORED VALUE CARDS, INC. (d/b/a NUMI FINANCIAL); and CENTRAL NATIONAL BANK AND TRUST COMPANY, ENID, OKLAHOMA,<br><br>            Defendants. | NO. 3:15-cv-01370-MO<br><br><br>**THE OREGON CLASS'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

# Table of Contents

I.    Introduction ........................................................................................................1

II.   Facts ...................................................................................................................2

III.  Defendants' Cardholder Agreement Was Not Used with all Class
      Members and Cannot Be the Basis for an Order To Compel Non-
      Recipients To Arbitrate their Claims...............................................................4

IV.   Members of the Class Did Not Agree to Arbitrate Their Claims
      Against Any Defendant .....................................................................................5

      A.   Defendants Have the Burden of Proving Class Members
           Voluntarily Entered into a Contract Requiring Arbitration. ..........................5

      B.   There Is No Contract Because There Is No Mutual Assent. ............................7

           1.   Receiving an Unrequested Card and Cardholder
                Agreement Does Not Create Mutual Assent. ...............................................7

           2.   Mutual Assent Is Not Shown By Using the Card To
                Retrieve Your Own Money..........................................................................10

           3.   Mutual Assent Is Not Shown By Not Responding To
                An Opt-Out Provision. .................................................................................13

      C.   There Is No Contract Because There Is No Consideration. ............................17

      D.   A Trial Is Not Required To Deny Defendants' Motion. ..................................20

      E.   Unconscionability Is Not An Issue. .................................................................21

V.    Defendants Waived Any Right They Had To Compel  the Class To
      Arbitrate their Claims......................................................................................22

VI.   Conclusion .......................................................................................................25

# Table of Authorities

## Cases

*Ackerberg v. Citicorp USA, Inc.,*
   898 F. Supp. 2d 1172 (N.D. Cal. 2012) ........................................................15

*Alde, S.A. v. United States,*
   28 Fed. Cl. 26 (1993) ......................................................................................9

*Anderson v. United States,*
   344 F.3d 1343 (Fed. Cir. 2003) .......................................................................7

*AT&T Techs. v. Communs. Workers of Am.,*
   475 U.S. 643, 106 S. Ct. 1415, 89 L.Ed.2d 648 (1986).....................................5

*Brown v. Stored Value Cards, Inc.,*
   2016 U.S. Dist. LEXIS 23026 (D. Or. February 25, 2016) .............................12

*Brown v. Stored Value Cards, Inc.,*
   953 F.3d 567 (9th Cir. 2020) .....................................................................1, 12

*Card v. Wells Fargo Bank, N.A.,*
   No. 3:19-cv-1515-SI, 2020 U.S. Dist. LEXIS 45117 (D. Or. Mar. 16,
   2020) .............................................................................................................20

*Citibank S. Dakota N.A. v. Santoro,*
   210 Or. App. 344, 150 P.3d 429 (2006) .........................................................12

*City of Cincinnati v. United States,*
   153 F.3d 1375 (Fed. Cir. 1998) .......................................................................9

*Comer v. Micor, Inc.,*
   436 F.3d 1098 (9th Cir. 2006) .........................................................................6

*Daugherty v. Experian Info. Sols., Inc.,*
   847 F. Supp. 2d 1189 (N.D. Cal. 2012) ...................................................15, 16

*Deloe v. Dep't Stores Nat'l Bank,*
   No. 3:17-cv-00022-SB, 2018 U.S. Dist. LEXIS 239247 (D. Or. Mar.
   23, 2018) ........................................................................................................15

*Edminster, Hinshaw, Russ & Assocs. v. Downe Twp.,*
   953 F.3d 348 (5th Cir. 2020) .........................................................................22

*Edwards v. First American Corp.*,
  289 F.R.D. 296 (C.D. Cal. 2012) .......................................................................24

*Emmert v. Clackamas Cty.*,
  No. 3:13-cv-01317-YY, 2016 U.S. Dist. LEXIS 182262 (D. Or. Oct.
  17, 2016) ............................................................................................................17

*Endeavour Structured Equity & Mezzanine Fund I, L.P. v. Engel (In re C
  & K Mkt., Inc.)*,
  Nos. 13-64561-fra11, 14-06119-fra, 2015 Bankr. LEXIS 1347 (Bankr.
  D. Or. Apr. 16, 2015) .........................................................................................18

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)....................................6

*Garbacz v. A.T. Kearny, Inc.*,
  No. C05-Garbacz, 2006 U.S. Dist. LEXIS 20135, 2006 WL 870690
  (N.D. Cal. Apr. 4, 2006) .......................................................................................6

*Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres*,
  No. 4:17-CV-00289, 2019 U.S. Dist. LEXIS 209252 (M.D. Pa. Oct. 8,
  2019) ...................................................................................................................14

*Glob. Exec. Mgmt. Sols. v. IBM*,
  260 F. Supp. 3d 1345 (D. Or. 2017) .....................................................................7

*Gunn v. NPC Int'l, Inc.*,
  625 F. App'x 261 (6th Cir. 2015) ........................................................................24

*Hilburn v. Encore Receivable Mgmt.*,
  No. 06-6096-HO, 2007 U.S. Dist. LEXIS 103273 (D. Or. July 11,
  2007) ...................................................................................................................15

*Hoffman v. Geico Ins. Co.*,
  347 F. App'x 295 (9th Cir. 2009)........................................................................20

*Holl v. UPS*,
  No. 16-cv-05856-HSG, 2017 U.S. Dist. LEXIS 153317 (N.D. Cal.
  Sep. 18, 2017) .......................................................................................................6

*In re Citigroup, Inc.*,
  376 F.3d 23 (1st Cir. 2004)..................................................................................23

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
  790 F.3d 1112 (10th Cir. 2015) ...........................................................................23

*Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*,
   201 Or. App. 568, 120 P.3d 6 (2005) ................................................................7

*Kingsbury v. U.S. Greenfiber, LLC*,
   2012 WL 2775022 (C.D. Cal. June 29, 2012) ..........................................23, 24

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ...........................................................5, 14, 15

*Laflamme v. Hoffman*,
   148 Me. 444, 95 A.2d 802 (1953).......................................................................18

*Lowman v. Citibank (S.D.), N.A.*,
   No. CV 05-8097-RGK (FMOx), 2006 U.S. Dist. LEXIS 96975 (C.D.
   Cal. Mar. 24, 2006).............................................................................15, 16

*Malan v. Tipton*,
   349 Or. 638, 247 P.3d 1223 (2011) ..............................................................14

*Martin v. Yasuda*,
   829 F.3d 1118 (9th Cir. 2016) ...........................................................22, 23, 24

*McCarthy v. Providential Corp.*,
   No. C94-0627 FMS, 1994 U.S. Dist. LEXIS 10122, 1994 WL 387852
   (N.D. Cal. July 19, 1994) ...................................................................................6

*Milbourne v. JRK Residential Am., LLC*,
   2016 WL 1071564 (E.D. Va. Mar. 15, 2016)...................................................24

*Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*,
   114 Wn.2d 572, 790 P.2d 124 (1990) .............................................................19

*Newirth v. Aegis Senior Comtys. Martin, LLC*,
   931 F.3d 935 (9th Cir. 2019) ....................................................................23, 24

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ...........................................................................6

*Norcia v. Samsung Telcoms. Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) ...........................................................................6

*Oliveira v. New Prime, Inc.*,
   424 F. Supp. 3d 206 (D. Mass. 2019)...............................................................24

*Owings v. Georgia Railroad Bank*,
   188 Ga. App. 265, 372 S.E.2d 825 (Ga. App. 1988)........................................19

*Prowant v. Fed. Nat'l Mortg. Ass'n*,
  255 F. Supp. 3d 1291 (N.D. Ga. 2017) ........................................................24

*Ranginwala v. Citibank, N.A.*,
  No. 18-cv-14896, 2020 U.S. Dist. LEXIS 217307 (D.N.J. Nov. 19,
  2020) .......................................................................................................15, 16

*Reed v. Ezelle Inv. Props.*,
  353 F. Supp. 3d 1025 (D. Or. 2018) .............................................................7

*Regan v. Stored Value Cards, Inc.*,
  85 F. Supp. 3d 1357 (N.D. Ga. 2015) ..........................................................9

*Reichert v. Keefe Commissary Network LLC*,
  No. C17-5848 BHS, 2021 U.S. Dist. LEXIS 103810 (W.D. Wash.
  June 2, 2021) ......................................................................................9, 10, 21

*Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*,
  993 F.3d 253 (4th Cir. 2021) ......................................................................20

*Schafer v. Fraser*,
  206 Or. 446, 290 P.2d 190 (1955) ..............................................................18

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012) ........................................................................13

*Scott v. Family Dollar Stores, Inc.*,
  2017 WL 412654 (W.D.N.C. Jan. 4, 2017) .................................................23

*Stephen Haskell Law Offices, PLLC v. Westport Ins. Corp.*,
  2011 U.S. Dist. LEXIS 37360 (E.D. Wash. Apr. 5, 2011) ...........................19

*Suitter v. Thompson et ux.*,
  225 Or. 614, 358 P.2d 267 (1960) ..............................................................14

*Sw. Or. Pub. Def. Servs., Inc. v. Dep't of Revenue*,
  312 Or. 82, 817 P.2d 1292 (1991) ..............................................................19

*UMG Recordings, Inc. v. Augusto*,
  628 F.3d 1175 (9th Cir. 2011) .....................................................................14

*Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*,
  489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) .............................6

*Wilson v. Huuuge, Inc.*,
  944 F.3d 1212 (9th Cir. 2019) .......................................................................5

**THE OREGON CLASS'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL ARBITRATION** - Page **v**

*Wisconsin & Michigan R. v. Powers*,
    191 U.S. 379, 24 S. Ct. 107, 48 L. Ed. 229 (1903) ..............................................................18

## Other Authorities

15 U.S.C. § 1693i .........................................................................................................................12

## I.    Introduction

When Oregon Class members were arrested and detained, any cash they had was confiscated and held for them until they were released. Defendants convinced the detention facilities to use them to return this money through prepaid debit cards rather than in cash or by check. Defendants did not charge facilities for this service. They profited by charging "maintenance" fees to card recipients for simply possessing the card and other fees for withdrawing money or checking the account balance. Oregon Class members had to accept these fee-laden release cards to obtain the money they were owed.

Class members should not have been required to obtain their funds through release cards under non-negotiable terms of a cardholder "agreement" that was purportedly handed to them when they received the unrequested cards. And under the Electronic Fund Transfer Act ("EFTA"), these cards are illegal because they were not voluntarily requested by Class members and because the fees charged were not permissible. *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 569 (9th Cir. 2020). Defendants contend, however, that the Oregon Class cannot continue to challenge these cards in court because the cardholder agreement contains a clause requiring arbitration of disputes.

Defendants' motion to compel arbitration under that clause should be denied. Defendants cannot prove – as they must to compel arbitration – that Oregon Class members voluntarily assented to the terms of any cardholder agreement, including any arbitration provision. Their motion fails to address a key, undisputed fact: Class members had to accept the release card if they wanted their own money back – they had no choice. And unlike cases Defendants cite where consumers opened accounts to obtain credit, no

Class member requested a release card as the means to have money returned. And credit card customers always had the option to take their loan requests to other vendors; Class members had no choice but to accept release cards and do business with Defendants if they wanted their money back.

Defendants' motion is brought against all Oregon Class members. But not all Class members received the proffered cardholder agreement with its arbitration clause. Defendants previously acknowledged that cardholder agreements issued when Republic Bank became Numi's partner bank did not include an arbitration clause. Class members receiving those and other cardholder agreements cannot be compelled to arbitrate.

Also, Defendants have long given up any right they had to seek arbitration. This Court found Defendants waived the right to require Plaintiff Danica Love Brown to arbitrate her claims by bringing motions on the merits of the claims she raised on behalf of the Class and using this judicial forum to obtain discovery. After waiving any right to arbitration, Defendants continued with summary judgment motions that successfully dismissed all claims in this case. After those orders were reversed by the Ninth Circuit, Defendants immediately filed an additional motion for summary judgment and a motion to strike the class allegations, further attempting to use this forum to eliminate claims raised on behalf of the Class. By their actions, Defendants also waived their right to assert any arbitration provision against other Class members.

## II.  Facts

The pertinent facts are simple. Ms. Brown was arrested by Portland Police during a peaceful protest in 2014. When booked into custody, she possessed $30.97, which was

confiscated and held for her. Like other Class members, her money was transferred to an account controlled by Defendants without her permission or knowledge. Those funds were used to load a prepaid debit card handed to her when she was released a few hours after her arrest. She and other Class Members had no option to receive back their money other than through the preactivated release card.

A "monthly" maintenance fee of $5.95 – almost 20% of her funds – was taken from the release card account five days after the card was issued. Ms. Brown was not aware her balance had been reduced by that fee until her card was rejected for having insufficient funds to complete a transaction, which also resulted in an additional charge to her account. The remaining balance was later depleted through a final "maintenance fee." Brown Decl., ECF No. 173 at ¶¶ 5-6, 13, 15, 28.

Ms. Brown filed this class action lawsuit with claims for conversion, unjust enrichment, illegal takings, and violations of the EFTA. Defendants responded with a motion to compel Ms. Brown to arbitrate those claims under the terms of their cardholder agreement. ECF No. 22. That motion was denied, and a trial was set to resolve factual disputes related to the arbitration provision. ECF No. 54, 61. Defendants then filed motions to dismiss, including a successful motion to dismiss the EFTA claim, sought and participated in discovery, and attempted to obtain favorable, precedential judicial decisions on the merits of Plaintiff's claims. As a result, this Court held Defendants waived their right to seek arbitration and struck the trial date. ECF No. 144. Defendants did not appeal that decision. Instead, they successfully pursued motions on summary

judgment to dismiss the remaining claims. All dismissals were later reversed by the Ninth Circuit.

After this matter returned from appeal, Defendants filed an additional motion for summary judgment, which included a motion to strike the class allegations. Both were denied. The Court then certified an Oregon Class and established a briefing schedule for Defendants' motion to compel the class to arbitrate its claims. For the reasons stated below, this motion should be denied.

### III. Defendants' Cardholder Agreement Was Not Used with all Class Members and Cannot Be the Basis for an Order To Compel Non-Recipients To Arbitrate their Claims.

The Oregon Class includes persons who were taken into custody in Oregon and issued unrequested release cards from July 22, 2014, to the present and paid fees or charges associated with those cards. Excluded from the class are persons who received their release cards from April 1, 2017, to April 30, 2018, who did not opt out of the settlement class in *Humphrey v. Stored Value Cards*, No. 1:18-CV-01050 (N.D. Ohio). ECF No. 249 at 17.

Defendants' motion seeks to compel members of the Oregon Class to arbitrate their claims under the terms of a cardholder agreement (ECF No. 149-6) available at the Multnomah County jail when Plaintiff was detained. Defendants provide no evidence that this document was used at other facilities in Oregon.[1] This document identifies

---

[1] Those other Oregon facilities include Curry County, Columbia County, and Lincoln County. Defendant Stored Value Cards, Inc.'s Responses and Objections to Plaintiff's First Interrogatories at 8, Declaration of Chris R. Youtz, Ex. A.

Defendant Central National Bank and Trust Company ("CNB") as Defendant Numi's participating bank. In 2015, CNB terminated its relationship with Numi,[2] who obtained a new participating bank. Numi acknowledges that the cardholder agreement used with a successor bank (Republic Bank) does not contain an arbitration clause. ECF No. 235 at 20. Defendants have presented no evidence or argument to support an order compelling arbitration of Class member claims under any cardholder agreement other than the one proffered in their motion. No order compelling arbitration should apply to Class members detained at facilities other than Multnomah County jail or any Oregon facility after CNB terminated its agreement with Numi in 2015.

### IV.   Members of the Class Did Not Agree to Arbitrate Their Claims Against Any Defendant

**A.    Defendants Have the Burden of Proving Class Members Voluntarily Entered into a Contract Requiring Arbitration.**

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L.Ed.2d 648, 655 (1986). And courts determine "whether a valid agreement to arbitrate exists." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). "[T]he party seeking to compel arbitration, has the burden of proving the existence of an agreement to arbitrate by preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "The party opposing the motion on the ground that there is no binding agreement to arbitrate should

---

[2] Rule 30(b)(6) Deposition of CNB through Dennis Gerhard at 72, Youtz Decl. Ex. B.

receive 'the benefit of all reasonable doubts and inferences that may arise.'" *Garbacz v. A.T. Kearny, Inc.*, No. C05-Garbacz, 2006 U.S. Dist. LEXIS 20135, 2006 WL 870690, at *2 (N.D. Cal. Apr. 4, 2006) (*quoting McCarthy v. Providential Corp.*, No. C94-0627 FMS, 1994 U.S. Dist. LEXIS 10122, 1994 WL 387852, at *2 (N.D. Cal. July 19, 1994)). *Holl v. UPS*, No. 16-cv-05856-HSG, 2017 U.S. Dist. LEXIS 153317, at *7 (N.D. Cal. Sep. 18, 2017). "[T]he 'liberal federal policy regarding the scope of arbitrable issues is inapposite' when the question is 'whether a particular party is bound by the arbitration agreement.' *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104, n.11 (9th Cir. 2006) (emphasis omitted); *see also, Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) ('[T]he FAA does not require parties to arbitrate when they have not agreed to do so….')." *Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279, 1291 (9th Cir. 2017).

To determine whether an agreement exists, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (*quoting First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)). In Oregon:

> Under Oregon law, whether a contract exists is a question of law. *Wieck v. Hostetter*, 274 Ore. App. 457, 471, 362 P.3d 254 (2015). A "contract is most commonly formed by an offer, an acceptance of that offer, and an exchange of consideration." *Moro v. State of Oregon*, 357 Ore. 167, 196, 351 P.3d 1 (2015). "Oregon applies an objective theory of contracts." *Wieck*, 274 Ore. App. at 471. That is, the existence and terms of a contract are determined by the evidence of the parties' communications and acts, not their subjective understandings. *Rhoades v. Beck*, 260 Ore. App. 569, 572, 320 P.3d 593 (2014). Oregon follows the mirror image rule of offer and acceptance. *Arboireau v. Adidas-*

> *Salomon AG*, 347 F.3d 1158, 1163 (9th Cir. 2003). "In Oregon, it
> is settled that the acceptance of an offer must correspond to the
> offer at every point, leaving nothing open for future
> negotiations." *Id.* (internal quotation and alterations omitted).
> "The acceptance must be positive, unconditional, unequivocal,
> and unambiguous, and must not change, add to, or qualify the
> terms of the offer."

*Reed v. Ezelle Inv. Props.*, 353 F. Supp. 3d 1025, 1031 (D. Or. 2018).

No member of the Oregon Class is bound by a cardholder agreement with an arbitration provision. Defendants have not shown they provided consideration and obtained mutual assent to form a binding contract with Class members.

**B.    There Is No Contract Because There Is No Mutual Assent.**

**1.    Receiving an Unrequested Card and Cardholder Agreement Does Not Create Mutual Assent.**

A contract requires mutual assent. The existence of a contract depends on whether a reasonable person, based upon objective manifestation of assent, and all the surrounding circumstances, would conclude that the parties intended to be bound by the contract. *Glob. Exec. Mgmt. Sols. v. IBM*, 260 F. Supp. 3d 1345, 1368 (D. Or. 2017); *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.*, 201 Or. App. 568, 578, 120 P.3d 6, 11 (2005) ("In determining whether a contract exists and what its terms are, we examine the parties' objective manifestations of intent, as evidenced by their communications and acts.") "As a threshold condition for contract formation, there must be an objective manifestation of voluntary, mutual assent." *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003).

Class members released from custody were handed an activated release card instead of the cash that was taken from them. Defendants contend their cardholder agreement accompanied those cards. That document proclaimed recipients immediately

agreed to its terms when the release card was handed to them.[3]  Thus, Defendants argue, Class members became committed to a contract before they could even read the terms. There was no negotiation or discussion over any terms in those agreements. Indeed, they had no opportunity to simply reject the card, or any terms it came with, without forfeiting their money. And Defendants preordained those terms would be accepted by starting the clock to impose fees under the cardholder agreement when the cards were activated before being handed to Class members. And if the Class member left the card at the jail or anywhere else, fees would accumulate until the balance was depleted:

> Q: And at what point in the process is the card activated?
>
> A: The card is activated, I believe, at the point of the load.
>
> Q: At the load, okay. And is it from that particular point in time that any monthly or weekly fees would be assessed for the card, that the clock would start running?
>
> A: I believe so.
>
> **Q**: So if an individual were to leave the card on the desk at the jail, it would be activated?
>
> **A**: Yes.
>
> * * * * *
>
> **Q**: And if a cardholder -- the card is activated but a cardholder does not use the card, if there are monthly account maintenance fees on that card, will they be charged until the balance is depleted?
>
> **A**: I believe so.

---

[3] The Cardholder Agreement states: "By accepting this Card, you agree to be bound by these terms and conditions (the 'Agreement')." ECF No. 149-6 at 2.

Rule 30(b)(6) Deposition of CNB through Dennis Gerhard at 82-83 and 220. Youtz Decl. Ex. B.

There was no objective manifestation of assent: "'compelled acquiescence' does not indicate intent to enter into a contract; rather, 'voluntary assent' is necessary." *City of Cincinnati v. United States*, 153 F.3d 1375, 1378 (Fed. Cir. 1998), *quoting Alde, S.A. v. United States,* 28 Fed. Cl. 26, 32 (1993). This is not a voluntary agreement; it is a mandatory program. Thus, it is understandable why courts have held cardholder agreements associated with Numi's release card (*Regan v. Stored Value Cards, Inc.*, 85 F. Supp. 3d 1357 (N.D. Ga. 2015)) and other release card programs (*e.g., Reichert v. Keefe Commissary Network LLC*, No. C17-5848 BHS, 2021 U.S. Dist. LEXIS 103810 (W.D. Wash. June 2, 2021)), are not binding and their arbitration clauses unenforceable.

*Regan* held that receiving and using an unrequested prepaid debit card from Numi was not binding consent to the arbitration provision in the cardholder agreement that came with the card. "Defendants' cited authority is even less persuasive due to another distinguishing factor:  Plaintiff received the Card while he was being discharged *from jail, i.e. from a condition of absence of liberty of choice which Defendant reasonably could have anticipated. Regan*, 85 F. Supp. 3d at 1364 (emphasis in original).

As here, the class members in *Reichert* had no choice but to accept a release card for the return of money held for them while they were in detention. An arbitration provision was included in the cardholder agreement accompanying those cards, which Rapid Financial sought to enforce against class representative Gary Moyer. That motion to compel was denied:

> Moyer, as far as he knew, was simply getting his money back when he left jail. A reasonable person in Moyer's position could not be expected to understand that he could not leave jail with his own money, a right protected by Washington law, without being bound to a contract with an unknown bank (subject to potentially illegal fees) and renouncing his right to sue or bring a class action. "Accepting" one's own money, in the only form available, cannot be construed as assent to contract. To decide otherwise would violate the offeree's right to make no reply to an offer.

*Reichert,* 2021 U.S. Dist. LEXIS 103810 at *19.

Defendants argue that Class members had "choices" because if they jumped through the right hoops, went to the right banks, all before the first maintenance fee kicked in, that they could get their money back fee-free. The existence of paths that could possibly be followed to avoid fees, however, does not determine whether there was a binding agreement created when the release card was handed to them. Fees are but one part of the cardholder agreement requirements and there are 33 numbered paragraphs of terms, plus 10 subparts in the arbitration provision, that Class members supposedly agreed to by "accepting" the card. There still must be mutual assent before a contract is made and arbitration is mandated. Offering clues to avoid fees does not fulfill that requirement.

### 2.    Mutual Assent Is Not Shown By Using the Card To Retrieve Your Own Money.

Defendants then contend that Class members objectively manifested their assent to the cardholder agreement, and its arbitration provision, by using the release card to retrieve their money. But a reasonable person would doubt that Defendants were even looking for any assent from Class members to the cardholder agreement. Defendants

knew Class members had no choice but to accept the card if they wanted their money back and did not wait for any sign of acquiescence before enforcing the terms of the non-negotiated contract. As noted above, the first "maintenance fee" required by the cardholder agreement occurred five days after the card was "activated" before it was handed to Class members. That fee was assessed regardless of whether the card had been used.[4] If the card was never used, maintenance fees continued to be withdrawn until no funds remained in the account.[5] "Use of the card" was irrelevant to mutual assent.

Also, a reasonable person would not see using the card as an objective expression of assent to a contract with arbitration terms, but, rather, as something to be expected from Class members to retrieve their own money, particularly when they were leaving a facility where they had no money other than what was on the card. The alternative – not using the card – meant Class members would be unable to obtain their money, which would then be consumed by maintenance fees.  The surrounding circumstances, including the facts that Class members did not request the release cards and had no choice but to accept the release card to get their money back, manifest an involuntary arrangement, not one created with mutual assent.

As this Court recognized, any "choice" to use the Card was not a choice at all: "Ms. Brown *had* to take the card and *had* to work through the Defendants' system in order to

---

[4] "If the cardholder doesn't use the card before the monthly maintenance fee kicks in, the monthly maintenance fee will be charged." Golden Dep., ECF No. 171-8 at 3.

[5] *Id*. at 5: "If a cardholder voluntarily does not use the card, then yes, the balance will be subject to the terms and conditions, which includes fees. "

get her money back." *Brown v. Stored Value Cards, Inc.*, 2016 U.S. Dist. LEXIS 23026, *10 (D. Or. February 25, 2016) (emphasis in original) (also noting if releasees "refused to take the Card, they are not refunded their money in any other form whatsoever.") In fact, Defendant CNB became concerned about the inmates' lack of choice and demanded that Numi offer an alternative to the release card at the time the inmates were being released. ECF No. 238-2 at 3. Numi refused to do so, *id.* at 4, and CNB withdrew from its agreement with Numi. *See*, Rule 30(b)(6) Deposition of CNB through Dennis Gerhard at 72. Youtz Decl. Ex. B.

As they have done in previous motions, Defendants rely on *Citibank S. Dakota N.A. v. Santoro*, 210 Or. App. 344, 349, 150 P.3d 429 (2006), where a bank's customer requested a credit card and ran up a bill that he refused to pay. That court held he had to pay his bill, rejecting his argument that he was not bound to a cardholder agreement he did not sign: "conduct in using [a] card constitute[s] mutual assent to the terms of the credit card agreement." Here, however, Class members did not request anything from Defendants – neither credit to make purchases nor release cards for the return of their own money – and this Court appropriately held the *Santoro* court's conclusion was inapplicable to Defendants' release cards because "Oregon has never found an agreement where the card holder did not apply for the card." *Brown*, 2016 U.S. Dist. LEXIS 23026 at *7. Consistent with this Court's conclusion, the statutes governing these debit cards also require they be requested before issued and then only after potential users could review and accept or reject the terms offered by the issuer. *See* 15 U.S.C. § 1693i; *Brown v. Stored Value Cards,*

*Inc.*, 953 F.3d 567, 574 (9th Cir. 2020). Class members' "use" of unrequested release cards was not mutual assent to the cardholder agreement.

### 3. Mutual Assent Is Not Shown By Not Responding To An Opt-Out Provision.

Because Defendants fail to show using the card created a contract, they argue that it is what Class members did ***not*** do that created an enforceable agreement.

The Cardholder Agreement arbitration provision allows card recipients to opt out of that requirement by mailing written notice received by Defendants within 30 days. ECF No. 149-6 at 3.[6] Defendants claim that the existence of a binding, mutually agreed-to contract is verified because they have no record that Class members submitted opt-out requests and "failure to exercise their opt-out options confirms their assent to the arbitration agreement." Motion at 7.

First, Defendants' opt-out provision is a term in a contract that was not accepted. "Applying [this] clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). There is no reason to opt out of an arbitration provision in a contract that was never agreed to in the first place.[7]

---

[6] The provision directs the cardholder to mail the opt-out notice to the address "shown in Contact Information." There is no such heading. There are two sets of addresses at the end of the cardholder agreement, one in Oklahoma, the other in California, but it is unclear where the letter should be mailed.

[7] Further, the opt-out right applies only to the arbitration provision, not to the entire contract. *See*, ECF No. 149-6 at 3, ¶ 33 ("will not have any other effect on this Agreement"). Thus, it does not address whether mutual assent was present to make the cardholder agreement binding on Class members.

Second, to the extent that the opt-out provision constitutes some form of offer, Class members are entitled to reject unsolicited offers by doing nothing. Assent may not be assumed from silence or nonresponse.

"As a general rule, silence does not indicate acceptance of an offer. *Malan v. Tipton*, 349 Or. 638, 652-53, 247 P.3d 1223, 1231 (2011), *citing Suitter v. Thompson et ux.*, 225 Or. 614, 623, 358 P.2d 267 (1960) (silence functions as acceptance only in limited circumstances where "a duty arises requiring a party to speak"). And "mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction or impose on him any duty to speak." *UMG Recordings, Inc. v. Augusto*, 628 F.3d 1175, 1182, n.6 (9th Cir. 2011). *See also, Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres*, No. 4:17-CV-00289, 2019 U.S. Dist. LEXIS 209252, at *3-4 (M.D. Pa. Oct. 8, 2019) (vacating arbitration award because there was no agreement to arbitrate, holding a party's failure to respond to a purported contract with an arbitration clause did not create a contract because "[m]erely sending an unsolicited offer does not impose upon the party receiving it any duty to speak or deprive the party of its privilege of remaining silent without accepting"). Placing an opt-out option in the cardholder agreement does not transform an involuntary contract into one with mutual assent. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014).

In *Knutson*, a plaintiff purchased a truck, which came with a 90-day trial subscription to Sirius XM satellite radio. After the trial subscription began, the plaintiff received a Sirius XM customer agreement, which included an arbitration provision. Similar to Defendants' arbitration provision, the document said the customer would be

obligated unless Sirius XM received notice of cancellation. The purchaser did not cancel the trial subscription. He later sued Sirius XM with claims regarding unsolicited marketing calls. Sirius XM attempted to force those claims into arbitration, claiming that the plaintiff agreed to arbitration by not canceling the subscription. The trial court granted the motion.

The Ninth Circuit reversed, holding that there was no valid arbitration agreement between the plaintiff and Sirius. The court rejected Sirius's argument that the plaintiff affirmed his "acceptance" of the agreement by not canceling and continuing to use the service. The court held there was no mutual assent because the plaintiff did not request the service and was under no obligation to read the unsolicited materials sent to him by Sirius. *Id*.

And that is why the six cases[8] cited by Defendants do not support their assertion that unless Class members submit a written opt-out notice they unequivocally agree to the terms of the cardholder agreement. In each of those cases, the customer requested and obtained a credit card to borrow money for purchases that were governed by terms of the bank's cardholder agreement. There was no dispute that the customers agreed to the terms in the cardholder agreement.

---

[8] *Deloe v. Dep't Stores Nat'l Bank*, No. 3:17-cv-00022-SB, 2018 U.S. Dist. LEXIS 239247 (D. Or. Mar. 23, 2018); *Hilburn v. Encore Receivable Mgmt.*, No. 06-6096-HO, 2007 U.S. Dist. LEXIS 103273 (D. Or. July 11, 2007); *Ranginwala v. Citibank, N.A.*, No. 18-cv-14896, 2020 U.S. Dist. LEXIS 217307 (D.N.J. Nov. 19, 2020); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172 (N.D. Cal. 2012); *Daugherty v. Experian Info. Sols., Inc.*, 847 F. Supp. 2d 1189 (N.D. Cal. 2012); and *Lowman v. Citibank (S.D.), N.A.*, No. CV 05-8097-RGK (FMOx), 2006 U.S. Dist. LEXIS 96975 (C.D. Cal. Mar. 24, 2006).

The dispute that arose in five of those cases was whether the original agreement could be changed to include an arbitration provision and other modifications. In at least three of those cases, that issue was answered by state statutes that allowed credit card agreements to be amended if the banks followed certain procedures, including allowing the customers to close their accounts before the new provisions went into effect.[9] In all five cases the customers (1) requested the credit cards to borrow money from a bank for purchases, (2) agreed with the terms offered by the bank with the card, and (3) could close their account and take their business elsewhere if they did not want to agree to the proposed modifications to those agreements.[10]

By contrast, Class members (1) did not seek anything from Defendants, including a release card to return their own money, (2) never had the right to choose whether to accept or reject the card and the terms in the cardholder agreement, and (3) could not go elsewhere to obtain their money without being subject to Defendants' fees and restrictions. Defendants' credit card cases, which all have a starting point of customers

---

[9] *Lowman* at *8-9 ("The procedures implemented by Citibank of giving notice and amending the original card agreement are expressly authorized by South Dakota law. *See* S.D. Codified Laws, § 54-11-10. In fact, the Attorney General of South Dakota has recently affirmed that South Dakota credit card issuers may adopt arbitration clauses using the mechanisms adopted by Citibank."). *See also*, *Daugherty* at 1195-96 and *Ranginwala* at *10-11, both applying South Dakota statutory law.

[10] In the sixth case, *Ranginwala,* 2020 U.S. Dist. LEXIS 217307 at *7, the plaintiff admitted "Under the terms of the credit card agreement between Defendant and [him], all claims arising out of their relationship are subject to arbitration" but argued that the arbitration portion became ineffective when the contract was terminated. There was no issue about opting in or out of the agreement. This setting has no relevance to this motion.

requesting credit and services to make purchases, are inapplicable in determining whether mutual assent is evidenced here. And the applicable statutes for Defendants' debit cards is the EFTA, which requires that the cards be requested before they are issued.

## C.    There Is No Contract Because There Is No Consideration.

"Consideration is a necessary element of a valid contract. In order for a contract to be binding, each party must give some legal consideration to the other by conferring some benefit upon the promisor or suffering a legal detriment ***at the promisor's request***." *Emmert v. Clackamas Cty.*, No. 3:13-cv-01317-YY, 2016 U.S. Dist. LEXIS 182262, at *30 (D. Or. Oct. 17, 2016) (emphasis added). Defendants claim they provide "benefits" to Class members that would not be available if their money was returned in cash or through a check, such as the opportunity to find and use an ATM machine to retrieve their money. They also argue that Defendant Numi accepted "the detriment risk of fraud losses arising from the use of its cards," although they do not explain how Numi has that obligation and whether it ever reimbursed a  Class member for a fraud loss.[11] Defendants contend these unrequested services, and the alleged detriment, provide the consideration to require Class members to pay hefty maintenance fees and other costs associated with the card and commit to arbitration.

---

[11] The only mention of fraud in the cardholder agreement states that the cardholder would be charged $9.95 "if the Card is closed for fraud." ECF No. 149-6 at 2, ¶ 4, n.7. Defendants' risks are not comparable to issuers of credit cards who run the risk that their customers will not repay their loans. Here, Defendants distribute funds and take their fees using the Class members' own money.

But there is no consideration that creates a contract unless both parties recognize the benefits and detriments being exchanged to form the agreement. Consideration is not found for unrequested services that were not bargained for:

> Nothing is consideration for a contract that is not regarded as such by *both parties*. The mere presence of some incident to a contract which might under certain circumstances be upheld as a consideration for a promise does not necessarily make it the consideration for the promise in that contract. To give it that effect, *it must have been offered by one party and accepted by the other as an element of the contract.* Accordingly, the fortuitous presence in a transaction of some possibility of detriment, latent but unthought of, is not enough to furnish a consideration for a contract. *The promisor and promisee must have dealt with it as the inducement to the promise.* In other words, on the one hand, the consideration must be the inducement to the making of the promise, and on the other, it must be induced by the promisor's express or implied request.

*Laflamme v. Hoffman*, 148 Me. 444, 451, 95 A.2d 802, 805 (1953) (emphasis in original). "The promise and the consideration must purport to be the motive each for the other, in whole or at least in part. It is not enough that the promise induces the detriment, or that the detriment induces the promise, if the other half is wanting." *Schafer v. Fraser*, 206 Or. 446, 467, 290 P.2d 190, 200 (1955), *quoting* Justice Holmes in *Wisconsin & Michigan R. v. Powers*, 191 U.S. 379, 24 S. Ct. 107, 48 L. Ed. 229 (1903); *accord, Endeavour Structured Equity & Mezzanine Fund I, L.P. v. Engel (In re C & K Mkt., Inc.)*, Nos. 13-64561-fra11, 14-06119-fra, 2015 Bankr. LEXIS 1347, at *11-13 (Bankr. D. Or. Apr. 16, 2015).

At the time Defendants claim the agreement was created, Class members never requested the services offered, had no way of knowing that Defendant Numi would incur any kind of detriment from the agreement, and did not know what the maintenance fees

were or why they should be required to pay them. One thing they did know when they were handed their card was that it was the only allowed means of retrieving their money. By loading those funds on the cards, however, Defendants did not provide consideration to form a contract.

Money confiscated from Class members was required to be safeguarded and returned to them when they were released. Defendants did not provide consideration by performing that legal duty to return funds back to their owners. "[N]either the performance of a pre-existing duty, nor the promise to perform a pre-existing duty, constitutes consideration." *Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 114 Wn.2d 572, 584, 790 P.2d 124, n.20 (1990). The "pre-existing duty" rule "holds that doing 'what one is already bound to do is not a consideration sufficient to support a contract.' The rationale of this rule is that, where a party already obligated to perform is not giving up anything for the benefit it is gaining, the law will not hold the other party to its promise to give up something in return for that performance." *Sw. Or. Pub. Def. Servs., Inc. v. Dep't of Revenue*, 312 Or. 82, 93, 817 P.2d 1292, 1298 (1991).

"This agreement thus obligated the appellants to do nothing more than what they were already legally obligated to do. An agreement on the part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another." *Stephen Haskell Law Offices, PLLC v. Westport Ins. Corp.*, 2011 U.S. Dist. LEXIS 37360, at *11-12 (E.D. Wash. Apr. 5, 2011), *quoting Owings v. Georgia Railroad Bank*, 188 Ga. App. 265, 372 S.E.2d 825, 826 (Ga. App. 1988). *See Hoffman v. Geico Ins. Co.*, 347 F. App'x 295, 296 (9th

Cir. 2009) (a release obtained by GEICO from plaintiff for $100,000 lacked consideration since GEICO was already obligated to make that payment).

Defendants do not provide consideration by returning money owned by and owed to Class members; they did not provide the consideration necessary to bind Class members to the terms of the cardholder "agreement."

**D.    A Trial Is Not Required To Deny Defendants' Motion.**

Lastly, Defendants suggest that a trial may be needed to resolve their motion to compel arbitration. They argue that if this trial occurs it would require "a detailed inquiry into the facts on a person-by-person basis," which would require decertification of the class. They are wrong. Trials are not needed to resolve issues that can be decided on undisputed facts, including disputes of whether an agreement to arbitrate exists:

> Just as in traditional litigation, the district court must employ the summary judgment standard as a gatekeeper, so a trial occurs only if there are "genuine issues of material fact." *Id.*; *see also Hub Int'l*, 944 F.3d at 234. In applying that standard, the burden is on the defendant to "establish[] the existence of a binding contract to arbitrate the dispute." *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 456 (4th Cir. 2017). Here the district court in effect granted summary judgment to the plaintiffs by finding that, as a matter of law, the parties did not form an agreement. We have long held that appropriate. *See, e.g., Stedor Enters., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 732-33 (4th Cir. 1991).

*Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021).

A factual dispute can arise in litigation over arbitrability as in *Card v. Wells Fargo Bank, N.A.*, No. 3:19-cv-1515-SI, 2020 U.S. Dist. LEXIS 45117, at *19 (D. Or. Mar. 16, 2020), where a credit card customer's sole argument against a motion to compel arbitration was

that he had never received a copy of the cardholder agreement despite testimony from his bank that it was mailed to him – a classic credibility dispute. Here, however, the issue is whether Defendants' cardholder agreement is enforceable even if received by a Class member. The answer is "No" because undisputed facts show there could be no mutual assent to that agreement.

In *Reichert*, under facts nearly identical to the scenario in this case, the court held no trial was needed because it was undisputed – as it is here – that release card recipients had no choice but to take the card and "accept" the cardholder agreement if they wanted their money returned to them. *Reichert v. Keefe Commissary Network LLC*, No. C17-5848 BHS, 2021 U.S. Dist. LEXIS 103810, at *17-18 (W.D. Wash. June 2, 2021).

Defendants do not identify any disputed, material facts that need to be resolved by trial to deny their motion to compel arbitration. Their motion is based on a legal argument that physically accepting a cardholder agreement with an unrequested release card to return money already owed to Class members creates a binding contract despite the undisputed fact that Class members have no choice but to use that card to retrieve that money or lose their funds to Defendants' maintenance fees. No trial is necessary.

## E.    Unconscionability Is Not An Issue.

Defendants argue that the cardholder agreement is not unconscionable under Oklahoma law, which they claim is applicable under Paragraph 28 of that document ("Governing Law/Jurisdiction"). This same provision requires "any actions or proceedings with respect to this Agreement or any services provided under this Agreement shall be brought only before a federal or state court of competent jurisdiction

in Oklahoma." Putting aside that inconsistency with Defendants' current demand for arbitration, Defendants again put the cart before the horse: "the choice-of-law provision has force only if the parties validly formed a contract. If the parties did not enter into a contract, then there is no choice-of-law clause to apply." *Edminster, Hinshaw, Russ & Assocs. v. Downe Twp.*, 953 F.3d 348, 351 (5th Cir. 2020) (citations omitted).

While any proposition that requires no choice but to accept all of its terms, including arbitration, to return your own money is likely unconscionable, that issue does not need to be decided to deny the motion to compel.

### V.   Defendants Waived Any Right They Had To Compel the Class To Arbitrate their Claims.

For the same reasons Defendants waived their right to arbitrate the claims of Ms. Brown, *see* ECF Nos. 140 and 144, Defendants have waived their right to arbitrate the claims of absent class members. Defendants (1) had knowledge of their existing right to compel arbitration; (2) acted inconsistently with that existing right; and (3) caused prejudice to absent class members resulting from such inconsistent acts. *See Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (listing elements of arbitration waiver).

Since the filing of Plaintiffs' original complaint over six years ago, ECF No. 1, Defendants have availed themselves of the judicial forum extensively: seeking a decision on the merits of Plaintiffs' claims through pre-trial motions practice and engaging in discovery. *See* ECF Nos. 58 (Defendants' joint motion to dismiss), 74 (Defendants' renewed joint motion to dismiss), 86 (Opinion and Order on motion to dismiss, granting dismissal of EFTA and section 1983 claims), 113 (Defendants' joint motion to dismiss Fifth

Amendment claim), 148 (Defendants' motion for summary judgment), 191 (Order Dismissing Case), 228 (Defendants' motion for summary judgment and motion to strike class allegations); *Newirth v. Aegis Senior Comtys. Martin, LLC*, 931 F.3d 935, 941 (9th Cir. 2019) ("Seeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum."). This activity caused absent class members to experience delay and to "expend more time, money, and effort than had they proceeded directly to arbitration," while providing Defendants with the benefits of the federal court system – such as the "potential for precedential decisions." *Martin*, 829 F.3d at 1127. That amounts to prejudice and, therefore, waiver. *See id.* at 1126-27.

This Court need not turn a blind eye to such prejudicial litigation activity simply because it occurred prior to class certification. *See In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1119 (10th Cir. 2015) (rejecting the notion that waiver as to absent class members cannot take place until after a class has been certified); *In re Citigroup, Inc.*, 376 F.3d 23, 28-29 (1st Cir. 2004) (noting that defendant's pre-certification litigation activity supported a finding of waiver); *Scott v. Family Dollar Stores, Inc.*, 2017 WL 412654, at *1 (W.D.N.C. Jan. 4, 2017) (collecting cases).

That would be to "ignore[] the realities of class-action litigation." *Kingsbury v. U.S. Greenfiber, LLC*, 2012 WL 2775022, at *6 (C.D. Cal. June 29, 2012). From the outset of this litigation, Brown has acted as putative class representative and her lawyers as Class counsel, ECF No. 1, and in that capacity sought to "vindicate" not only Brown's interests

but those of the absent class members.[12] *Kingsbury*, 2012 WL 2775022, at *6. Meanwhile, Defendants took "advantage of being in federal court," *Martin*, 829 F.3d at 1125, by asserting defenses to class-wide theories of liability – defenses that would have had issue preclusive and precedential effect on the entire putative class. Such "gamesmanship" cannot be condoned by the courts. *Edwards v. First American Corp.*, 289 F.R.D. 296, 307-08 (C.D. Cal. 2012); *see also, Milbourne v. JRK Residential Am., LLC*, 2016 WL 1071564, at *9 (E.D. Va. Mar. 15, 2016) (finding waiver as to absent class members appropriate to sanction defendants' "'heads I win, tails you lose' strategy").

Rather than seal off pre-certification activity from the waiver analysis, courts are instructed to take a "holistic approach" to the waiver inquiry, which is focused on asking whether "a party's actions indicate a conscious decision to seek judicial judgment on the merits of the arbitrable claims." *Newirth*, 931 F.3d at 941 (internal quotation marks and alterations omitted). Here, the answer as to all Class members is a resounding yes. Defendants have thus waived their right to arbitrate class members' claims.

---

[12] The same reasoning has been applied to the context of representative collective actions brought under the Fair Labor Standards Act. A Sixth Circuit panel, for example, stated that since "all plaintiffs are represented by the same counsel and assert claims … pursuant to the same uniform policies … the effects [of the waiver] [are] effectively the same for all plaintiffs, irrespective of when they opted in." *Gunn v. NPC Int'l, Inc.*, 625 F. App'x 261, 267 (6th Cir. 2015); *see also, Prowant v. Fed. Nat'l Mortg. Ass'n*, 255 F. Supp. 3d 1291, 1298 (N.D. Ga. 2017) (finding that all opt-in plaintiffs were "similarly situated [to named plaintiffs] with respect to the issues posed by [the defendant's] waiver," regardless when they joined the litigation); *Oliveira v. New Prime, Inc.*, 424 F. Supp. 3d 206, 212 (D. Mass. 2019) (similar).

## VI.   Conclusion

For the reasons provided above, the Court should deny Defendants' motion to compel arbitration.

DATED:  August 27, 2021.

MEGAN E. GLOR, ATTORNEYS AT LAW, P.C.
Megan E. Glor, OSB No. 930178
megan@meganglor.com
707 NE Knott Street, Suite 101
Portland, OR 97212
Tel. (503) 223-7400
Fax (503) 751-2071

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

  _s/ Chris R. Youtz_____
Chris R. Youtz, *Pro Hac Vice*
chris@sylaw.com
Richard E. Spoonemore, *Pro Hac Vice*
rick@sylaw.com
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
Fax (206) 223-0246

PUBLIC JUSTICE
Karla Gilbride, *Pro Hac Vice*
kgilbride@publicjustice.net
1620 L Street NW, Suite 630
Washington, DC  20036
Tel. (202) 861-5241
Fax (202) 232-7203

HUMAN RIGHTS DEFENSE CENTER
Daniel L. Marshall, *Pro Hac Vice*
dmarshall@humanrightsdefensecenter.org
P.O. Box 1511
Lake Worth, FL 33460
Tel. (561) 360-2523
Fax (561) 828-8166

Attorneys for Plaintiff / Oregon Class

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 7,156 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED:  August 27, 2021.

_s/ Chris R. Youtz_

Chris R. Youtz, *Pro Hac Vice*
chris@sylaw.com