IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**DANICA LOVE BROWN**, *individually and on behalf of all others similarly situated*,

    Plaintiff,

v.

**STORED VALUE CARDS, INC.**, *dba NUMI Financial*, **CENTRAL NATIONAL BANK AND TRUST COMPANY, ENID, OKLAHOMA**,

    Defendants.

No. 3:15-cv-01370-MO

OPINION AND ORDER

**MOSMAN, J.,**

    Defendants seek to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4. For the reasons set forth below, I DENY Defendants' Motion to Compel Arbitration [ECF 253]. Pursuant to this Court's Order from November 15, 2021, [ECF 262], the parties are ordered to provide supplemental briefing containing a state-by-state analysis of whether the Court should reach the same conclusion under the laws of the other states. Supplemental briefing is due on this issue by December 30, 2021.

1 – OPINION AND ORDER

**BACKGROUND**

The parties are intimately familiar with the facts in this case, so I do not repeat them here. In the present motion, Defendants ask the Court to compel arbitration.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA") applies to all contracts involving interstate commerce and states in part that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. A party seeking to compel arbitration can do so under the FAA. *Id.* § 4.

The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Under the FAA, the district court is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

The burden is on the party seeking to compel arbitration to prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

To determine whether a valid agreement to arbitrate exists, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In Oregon, the ordinary state-law principles that govern the formation of contract are as follows:

> Under Oregon law, whether a contract exists is a question of law. A contract is most commonly formed by an offer, an acceptance of that offer, and an exchange of consideration. Oregon applies an objective theory of contracts. That is, the existence and terms of a contract are determined by the evidence of the parties' communications and acts, not their subjective understandings. Oregon follows the mirror image rule of offer and acceptance. In Oregon, it is settled that the acceptance of an offer must correspond to the offer at every point, leaving nothing open for future negotiations. The acceptance must be positive, unconditional, unequivocal, and unambiguous, and must not change, add to, or qualify the terms of the offer.

*Reed v. Ezelle Inv. Props. Inc.*, 353 F. Supp. 3d 1025, 1031 (D. Or. 2018) (internal quotations and citations omitted).

Under the objective theory of contracts, mutual assent is required. *Ken Hood Const. Co. v. Pac. Coast Const., Inc.*, 201 Or. App. 568, 578, 120 P.3d 6 (Or. Ct. App. 2005). In Oregon, "whether the parties entered into a contract does not depend on their uncommunicated subjective understanding; rather it depends on whether the parties manifest assent to the same express terms." *DCIPA, LLC v. Lucile Slater Packard Children's Hosp. at Stanford*, 868 F. Supp. 2d 1042, 1053 (D. Or. 2011) (internal quotation marks omitted). Courts look to the parties' "objective manifestations of intent, as evidenced by their communications and acts." *Glob. Exec. Mgmt. Sols., Inc. v. Int'l Bus. Machs. Corp.*, 260 F. Supp. 3d 1345, 1368 (D. Or. 2017) (quoting *Ken Hood*, 120 P.3d at 11).

## DISCUSSION

Defendants argue that Ms. Brown and other class members manifested their assent to the arbitration agreement contained in the Cardholder Agreement through (1) accepting the release cards, (2) not opting out of arbitration, and (3) using the cards to access the money. Mot. to Compel Arbitration [ECF 253] at 6, 8. The agreement given out with the card stated that through accepting the card, "you agree to be bound by the terms and conditions." Verschelden Decl. [ECF 149] Ex. 1-F at 2. Card recipients then had 30 days to opt out of arbitration. *Id.* at 3.

Ms. Brown asserts that "receiving an unrequested card and cardholder agreement does not create mutual assent." Resp. in Opp'n to Mot. to Compel Arbitration [ECF 257] at 7. She contends there is no objective manifestation of voluntary, mutual assent because class members received the cards upon their release from custody and the cardholder agreement "proclaimed recipients immediately agreed to its terms when the release card was handed to them." *Id.* at 7–8. Class members had no choice but to receive the money confiscated from them on the cards, the cards were activated before being handed to class members, and card activation started the accumulation of fees that would continue until the balance on the card was depleted. *Id.* at 8.

Here, I find there is no valid agreement to arbitrate because there was no mutual assent. I address Defendants' three arguments as to why the Court should find mutual assent in turn.

## I. Acceptance of the Release Cards Does Not Create Mutual Assent.

Here, I agree with Ms. Brown's argument that there is no mutual assent when the class members became committed to the terms of the contract before having any opportunity to review the terms of the Cardholder Agreement.

In this case, the class members were handed a card that had already been activated. Youtz Decl. [ECF 258] Ex. 2 at 8. When the cards were handed to class members upon their release from jail, the Cardholder Agreement accompanied the cards. Defs.' Mot. to Compel Arb. [ECF 253] at 7. The Cardholder Agreement reads: "By accepting this Card, you agree to be bound by these terms and conditions (the 'Agreement')." Verscheldon Decl. [ECF 149] Ex. 1-F at 2. Under these facts, there is simply no way it can be demonstrated that the "parties manifest[ed] assent to the same express terms." *DCIPA, LLC*, 868 F. Supp. 2d at 1053 (internal quotation omitted). The record demonstrates that there was no communication before class members were handed the card and the card holder agreement. Further, class members were not afforded time to read the

4 – OPINION AND ORDER

cardholder agreement before it purported to bind them to arbitration. There are no communications or acts by the class members that demonstrate an objective manifestation of intent to be bound by the arbitration agreement. *See Glob. Exec. Mgmt. Sols., Inc.*, 260 F. Supp. 3d at 1368. Therefore, the class members' acceptance of the cards does not create mutual assent.

### II. Class Members Failure to Opt-Out of Arbitration Does Not Create Mutual Assent.

Defendants argue that because the class members did not opt out of the arbitration agreement, they confirmed their assent to the arbitration agreement. Defs.' Mot. to Compel Arbitration [ECF 253] at 7. To support this point, Defendants cite to numerous district court cases that found arbitration agreements enforceable when the plaintiff failed to opt out. *DeLoe v. Dep't Stores Nat'l Bank*, No. 3:17-cv-00022-SB, 2018 WL 4655765, at *5 (D. Or. Mar. 23, 2018); *Citibank S.D. N.A. v. Santoro*, 210 Or. App. 344, 349, 150 P.3d 429 (2006); *Hillburn v. Encore Receivable Mgmt., Inc.*, No. 06-6096-HO, 2007 WL 8650773, at *2 (D. Or. July 11, 2007); *Ranginwala v. Citibank, N.A.*, No. 18-cv-14896, 2020 WL 6817508, at *4 (D. N.J. Nov. 19, 2020); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176 (N.D. Cal. 2012).

Ms. Brown argues that these cases are distinguishable because "[i]n each of those cases, the customer requested and obtained a credit card to borrow money for purchases that were governed by terms of the bank's cardholder agreement. There was no dispute that the customers agreed to the terms in the cardholder agreement." Resp. in Opp'n to Mot. to Compel Arbitration [ECF 257] at 15. I agree with Ms. Brown.

In my prior Opinion and Order on Defendants' First Motion to Compel Arbitration, I recognized that "Oregon courts have found 'conduct in using [a] card constitute[s] mutual assent to the terms of the credit card agreement' when a plaintiff applies for and receives a consumer credit card along with a card agreement." Opinion & Order [ECF 61] at 4 (citing *Citibank S.D.*

*N.A. v. Santoro*, 210 Or. App. 344, 349, 150 P.3d 429 (2006)). I went on to state that "Oregon has never found an agreement where the card holder did not apply for the card." *Id.*

I stand by my analysis from 2016 and again find that where the class members received a card they did not request upon their release from prison, failure to opt out of the arbitration agreement does not amount to mutual assent.

Additionally, I agree with Ms. Brown's contention that there is no need for an individual to opt out of an arbitration provision of a contract that the individual did not agree to in the first place. Resp. in Opp'n to Mot. to Compel Arbitration [ECF 257] at 13. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014) stands for the proposition that "continued use of [a] service after [plaintiff's] receipt of the Customer Agreement did not manifest…assent to the provisions in the Customer Agreement" because the court found that the plaintiff did not intend to enter into a contractual relationship with defendant in the first place. Therefore, the customer had no reason to read the customer agreement that mandated arbitration and opt-out.

### III. Class Members Use of the Card to Retrieve Their Own Money Does Not Show Mutual Assent.

Defendants' final argument is that because the class members used the cards, they assented to arbitration. Mot. to Compel Arbitration [ECF 253] at 8. Here, Defendants again cite to cases, such as *Citibank South Dakota N.A. v. Santoro*, 210 Or. App. 344, 150 P.3d 429 (2006), that involve individuals who requested credit cards to support the idea that use of a card demonstrates mutual assent. Ms. Brown counters that precedent from cases involving credit cards is inapplicable where, as here, the cards were not requested from the Defendants. Resp. in Opp'n to Mot. to Compel Arbitration [ECF 257] at 8–10.

Because, as discussed above, the cases involving individuals who requested credit cards from banks are inapposite here, I find that the class members use of the card to retrieve their own money does not demonstrate mutual assent.

## IV. The Parties Must Now Brief Whether Mutual Assent Exists Under the Laws of the Other States.

In the Fall of 2020, Defendants moved for summary judgment, Mot. for Summ. J. [ECF 228], and Ms. Brown moved for class certification, Mot. to Certify Class [ECF 230]. I denied the Motion for Summary Judgment in its entirety, Opinion & Order [ECF 245], and granted in part and denied in part Ms. Brown's Motion for Class Certification. Opinion & Order [ECF 249].

In ruling on Ms. Brown's prior motion, I identified that, as it relates to the arbitration agreement, Ms. Brown failed to brief whether the mutual assent and consideration analysis varied by state. *Id.* at 8. For this reason, I denied Ms. Brown's request to certify a nationwide class and instead certified an Oregon subclass.

The Opinion and Order went on to say "If, upon later briefing, I conclude that Defendants' arbitration argument fails under Oregon law, I will have the parties brief whether I should reach the same conclusion under the laws of other states." [ECF 249] at 8. As I find here that there is no mutual assent under Oregon law, and therefore no valid agreement to arbitrate, the parties are ordered, pursuant to this Court's November 15, 2021 Order, [ECF 262], to submit supplemental briefing containing a state-by-state analysis of whether I should reach the same conclusion under the laws of the other states.

## V. Other Issues

Because the Court finds there is no valid agreement to arbitrate, the Court does not need to consider the other issues raised by Defendants in their motion.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Compel Arbitration [ECF 253] is DENIED. Pursuant to this Court's Order from November 15, 2021, [ECF 262], the parties are ordered to provide supplemental briefing containing a state-by-state analysis of whether the Court should reach the same conclusion under the laws of the other states. As previously ordered, supplemental briefing is due by December 30, 2021.

IT IS SO ORDERED.

DATED this _____ day of December, 2021.

MICHAEL W. MOSMAN
United States District Judge

8 – OPINION AND ORDER